IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| ROY WALKER AND SHELLIE WALKER | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No.  04-155 L |
| v. | ) | |
| | ) | Judge Susan G. Braden |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301
Telephone No.: (603) 230-2583
Facsimile No.:  (603) 225-1577
E-mail: kristine.tardiff@usdoj.gov

OF COUNSEL:

MARY ANN JOCA
Assistant Regional Attorney
Office of the General Counsel
United States Dept. of Agriculture
P.O. Box 586
Albuquerque, N.M. 87103-0586

Dated: August 31, 2007

# TABLE OF CONTENTS

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM IN SUPPORT OF DEFENDANT'S SUMMARY JUDGMENT
MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    FACTUAL AND PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . 3

      A.    Plaintiffs' Alleged Acquisition of Water Rights Under New
            Mexico Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Plaintiffs' Takings Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    Prior Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            1.    The Supreme Court of New Mexico's Decision on the
                  Certified Questions of State Law. . . . . . . . . . . . . . . . . . . . . . 6

            2.    The Prior State Adjudication of Plaintiffs' Alleged
                  Water Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    The Summary Judgment Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.    Plaintiffs' Takings Claims Must Be Rejected Because They
            Cannot Establish The Takings of Any Property Rights Protected
            by the Fifth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            1.    Plaintiffs' Claim That Their Forage Rights Have Been
                  Taken Must Be Rejected Because The New Mexico Supreme
                  Court Has Determined That Plaintiffs' Do Not Have
                  Such A Right. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            2.    Plaintiffs' Claim That Their Water Rights Have Been
                  Taken Must Be Rejection Because, Contrary to Their Allegations
                  They Do Not Possess Vested Water Rights Under New Mexico
                  Law on the Allotment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                  a.    The Mimbres Adjudication. . . . . . . . . . . . . . . . . . . . 18

i

b.      The Walkers Have No Property Interest in the Water
Rights That Were Awarded to the United Sates in the
Mimbres Adjudication. . . . . . . . . . . . . . . . . . . . . . . . . . 22

c.      Plaintiffs' Have Not Acquired Vested Water Rights
to Any Other Waters on the Allotment Outside of the
Mimbres Adjudication. . . . . . . . . . . . . . . . . . . . . . . . . . 25

C.      Plaintiffs' Claim That Their Water Rights Have Been Taken Based
on a Denial of Access Must Be Rejected. . . . . . . . . . . . . . . . . . . . . . . . 31

D.      There Has Been No Taking of Plaintiffs' Ranch. . . . . . . . . . . . . . . . . . . 34

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# TABLE OF AUTHORITIES

**CASES**

Air Pegasus of D.C., Inc. v. United States,
        424 F.3d 1206 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Anderson v. Liberty Lobby, Inc.,
        477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Avenal v. United States,
        100 F.3d 933 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Burgett v. Calentine,
        242 P.2d 276 (N.M. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Carson v. Dept. of Energy,
        398 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Celotex Corp. v. Catrett,
        477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Clodfelter v. Reynolds,
        358 P.2d 626 (N.M. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Colorado River Water Conserv. Dist. v. United States,
        424 U.S. 800 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Colvin Cattle Co., Inc. v. United States,
        468 F.3d 803 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 35, 36

Diamond Bar Cattle Co. v. United States
        168 F.3d 1209 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

El Paso & R. I. Ry. v. Dist. Ct. of Fifth Judicial Dist. for Chaves Count,
        8 P.2d 1064 (N.M. 1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Elephant Butte Irrig. Dist. v. Regents of N.M. State Univ.,
        849 P.2d 372 (N.M. Ct. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Gould, Inc. v. United States,
        67 F.3d 925 (Fed Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Hanson v. Turney,
        94 P.3d 1 (N.M. Ct. App. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 26, 27

Harkey v. Smith,
        247 P. 550 (N.M. 1926). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Holguin v. Elephant Butte Irrig. Dist.,
        575 P.2d 88 (N.M. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Illinois v. United States,
        15 Cl. Ct. 399 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Klamath Irrig. Dist. v. United States,
        67 Fed. Cl. 504 (2005), appeal docketed,
        No. 07-5115 (Fed. Cir. May 16, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Knieper v. United States,
        38 Fed. Cl. 128 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lindsey v. McClure,
        136 F.2d 65 (10th Cir.1943). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Nat'l Educ. Ass'n, Inc. v. Lee County Bd. of Public Instruction,
        467 F.2d 447 (5th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Nat'l Railroad Passenger Corp. v. Rountree Transport and Rigging, Inc.,
        422 F.3d 1275 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mimbres Valley Irrig. Co. v. Salopek,
        564 P.2d 615 (N.M. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 19-22

Skip Kirchdorfer, Inc. v. United States,
        6 F.3d 1573 (Fed. Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 25

State ex rel. Martinez v. City of Las Vegas,
        89 P.3d 47 (N.M. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

State ex rel. Reynolds v. Sharp
        344 P.2d 943 (N.M. 1959)), cert. denied, 851 P.2d 481 (N.M. 1993). . . . . . . . . . . . . . 19

Sweats Fashions, Inc. v. Pannill Knitting Co.,
        833 F.2d 1560 (Fed. Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iv

United States v. City of Las Cruces,
    289 F.3d 1170 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

United States v. Fuller,
    409 U.S. 488 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

United States v. New Mexico,
    438 U.S. 696 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Walcek v. United States,
    303 F.3d 1349 (Fed. Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Walker v. United States,
    162 P.3d 882 (N.M. 2007). . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6, 7, 14, 15, 17, 18, 31, 34

Walker v. United States,
    66 Fed. Cl. 57 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5, 27, 34, 35

Walker v. United States ,
    72 Fed. Cl 186 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

## CONSTITUTIONS

N.M. Const. art. XVI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## STATUTES

43 U.S.C. § 1752(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 27
43 U.S.C. § 666. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11, 20
NMSA 1978 § 72-1-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
NMSA 1978 § 72-12-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
NMSA 1978 § 72-5-23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
NMSA 1978 § 72-5-24. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
NMSA § 72-12-7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## REGULATIONS

36 C.F.R. § 222.3(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29
36 C.F.R. § 222.9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
36 C.F.R. § 251.54. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**RULES**

NMRA Rule 12-607. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
RCFC 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

**OTHER AUTHORITIES**

17A Wright, Miller & Cooper, Fed. Practice & Procedure,
     Juris.3d § 4248 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

G. Emlen Hall, The Forest Service and Western Water Rights:
     An Intimate Portrait of United States v. New Mexico,
     45 Nat. Resources J. 979 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**INDEX OF EXHIBITS FILED IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**[1]

| Exhibit No. | Description | Beginning Page No. in Appendix |
|---|---|---|
| 1 | Term Grazing Permit No. 06-1099, issued by U.S.D.A.–Forest Service to Roy Dee or Shellie Ann Walker, dated March 23, 1995 (AR 1.0) | 1 |
| 17 | Letter to Roy D. Walker from Gerald A. Engel, District Ranger, dated November 8, 1996, re: cancellation of Term Grazing Permit No. 06-1099 (AR 51.0) | 51 |
| 24 | Excerpt of Plaintiff-Appellants' Brief-in-Chief before the Supreme Court of New Mexico, pp. 1–3 (filed March 9, 2006) | 96 |
| 25 | Mimbres Valley Irrig. Co. v. Salopek, et al., No. 6326, Order, Sub-File No. 672, Defendant Dominguez (6th Judicial Dist., Luna County, NM, Nov. 5, 1974) | 109 |
| 26 | Mimbres Valley Irrig. Co. v. Salopek, et al., No. 6326, Order, Sub-File No. 761, Defendant Oliver (6th Judicial Dist., Luna County, NM, Aug. 24, 1987) | 111 |
| 27 | Mimbres Valley Irrig. Co. v. Salopek, et al., No. 6326, Amended Stipulation on the United States' Water Rights Claims, Subfile No. 914, Defendant United States (6th Judicial Dist., Luna County, NM, Aug. 31, 1990) | 114 |

---

[1]Defendant's Exhibit ("Def. Ex.") numbers 1 through 23 are the exhibits contained in Defendant's Appendix (dated May 3, 2004) filed in support of Defendant's Motion to Dismiss (Doc. 7). Defendant's Exhibit numbers 24 through 31 are contained in the Appendix (dated July 6, 2006) filed in support of Defendant's Motion for Summary Judgment (Doc. 36). Defendant's Exhibit 32 is an attachment to this motion and supporting memorandum.

28    <u>Mimbres Valley Irrig. Co. v. Salopek, et al.</u>,
      No. 6326, Order approving Amended Stipulation, Sub-File No.
      914, Defendant United States
      (6th Judicial Dist., Luna County, NM, Sept. 5, 1990)                 175


29    <u>Mimbres Valley Irrig. Co. v. Salopek, et al.</u>,
      No. 6326, Final Decree, Mimbres River Stream System and
      Mimbres Underground Water Basin
      (6th Judicial Dist., Luna County, NM, Jan. 14, 1993)                 181


30    Declaration of Ralph D. Pope, dated June 30, 2006, with the
      following attachments:

          Exhibit 1: Cold/Hot Springs Allotment Map, Recorded Water
          Spreadsheet Attachment 1: Stock Tanks Claimed by Walkers
          Spreadsheet Attachment 2: Wells Claimed by Walkers
          Spreadsheet Attachment 3: Springs Claimed by Walkers               185


31    Declaration of Ownership of Livestock Water Dam or Tank,
      filed with the New Mexico State Engineer Office by Declarant
      Roy Walker on January 16, 1997.                                        205


32    Excerpt from Plaintiff-Appellant's Reply Brief, filed in the
      Supreme Court of the State of New Mexico (dated August 30,             207
      2006)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to RCFC 56 and the Court's scheduling Order of July 19, 2007 (Doc. 43), Defendant United States hereby moves for summary judgment as to all of Plaintiffs' remaining claims.

On February 5, 2004, Plaintiffs filed a complaint in this Court alleging a taking of their ranch and appurtenant water rights, forage rights, grazing preferences, the right to access that water and forage, and range rights (or range improvements), based on the Forest Service's suspension and subsequent cancellation of a term grazing permit.  That permit allowed Plaintiffs to graze livestock on approximately 17,826 acres of federal land that are located within the Gila National Forest in New Mexico and known as the Hot Springs and Cold Springs Allotment ("Allotment").  The Court previously granted Defendant's motion to dismiss as to Plaintiffs' claim that their grazing permit and grazing preferences have been taken, finding that their term grazing permit and any grazing preferences do not constitute property rights that are protected by the Fifth Amendment.  Walker v. United States, 66 Fed. Cl. 57, 67 (2005).[2]  In addition, the Court granted Defendant's motion to dismiss Plaintiffs' claim for compensation for the loss of their range rights or improvements as time-barred.  Id., 66 Fed. Cl. at 65.

Summary judgment should now be entered with respect to Plaintiffs' remaining takings claims because each of those claims is premised on the assertion that Plaintiffs have a right to graze livestock on the Allotment incident to their water rights and related rights-of-way.  That

---

[2]The prior decisions in this case are abbreviated herein as follows: Walker v. United States, 66 Fed. Cl. 57 (2005) ("Walker I"); Walker v. United States, 69 Fed. Cl. 222 (2005) ("Walker II"); Walker v. United States, 72 Fed. Cl 186 (2006) ("Walker III"); and Walker v. United States, 162 P.3d 882 (N.M. 2007) ("Walker IV").

premise was flatly rejected by the New Mexico Supreme Court in response to two questions certified to it by this Court. Specifically, the New Mexico Supreme Court held that the Walkers do not have a property right cognizable under state law to graze on the Allotment that attaches to their alleged water rights. Walker IV, 162 P.3d 882, 895 (N.M. 2007). The New Mexico Supreme Court further held that the Walkers do not have a forage right on federal lands implicit in their right-of-way for the maintenance and enjoyment of any such water rights. Id. at 896.

Alternatively, Plaintiffs' remaining claims should be rejected because, contrary to their assertions, Plaintiffs do not possess any vested water rights on the Allotment under state law.[3] As set forth in the following memorandum in support of this motion, Plaintiffs' numerous statements to this Court that they are the owners of vested water rights, including a sworn declaration, failed to inform the Court that nearly all of these claimed water rights were the subject of a general stream adjudication under New Mexico law. The water rights at issue in this state adjudication that are located on federal lands within the Allotment were awarded by final judicial decree entered in 1993 to the United States, not to the Plaintiffs or their predecessors-in-interest. Moreover, Plaintiffs do not possess vested water rights under New Mexico law to any remaining waters on the Allotment that were not identified in the adjudication. Accordingly, Plaintiffs do not possess the vested water rights that they allege to have been taken from them, and summary judgment on Plaintiffs' takings claims should therefore be entered in favor of the United States.

---

[3]This Court denied Defendant's prior motion for summary judgment on the water rights issue (Doc. 36) as untimely, but stated that the motion may be "refiled after the Supreme Court of the State of New Mexico answers the certified questions." Walker III, 72 Fed. Cl. 186, 187 (2006).

Moreover, even if the Court assumes that Plaintiffs possess vested water rights under state law, the New Mexico Supreme Court has held that Plaintiffs do not have any right to bring their cattle to the water on the Allotment.  Although Plaintiffs arguably might have a right to move that water off the Allotment to a location where they can put the water to beneficial use, Plaintiffs have not attempted to do so. Accordingly, any claim that Defendant has taken Plaintiffs' water rights by denying access to water on the Allotments must be rejected.

Finally, Plaintiffs' claim that their ranch has been taken should be rejected as a matter of law.  This claim, like the others, is premised on Plaintiffs' inability to use the Allotment for grazing.  Because Plaintiffs do not have a property right under state law to graze their livestock on the Allotment, there can be no taking of their ranch based on the cancellation of their term grazing permit and any consequential damage to their ranch or ranching operations.

For each of these reasons, which are explained in more detail in the supporting memorandum that follows, Defendant respectfully requests that the Court grant this motion for summary judgment as to all of the Plaintiffs' remaining takings claims.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S SUMMARY JUDGMENT MOTION**

I.      FACTUAL AND PROCEDURAL BACKGROUND

A detailed summary of the factual and procedural background in this case is presented in the Court's Memorandum Opinion and Order of May 31, 2005, 66 Fed. Cl. 57 (Walker I), in the Court's Memorandum Opinion and Order of October 31, 2005, 69 Fed. Cl. 222 (Walker II), and in Defendant's Motion to Dismiss of May 4, 2004 (Doc. 7).  The summary included in this brief is limited to additional facts related to Plaintiffs' remaining claims and to the prior proceedings that affect the final resolution of those claims.

A.     Plaintiffs' Alleged Acquisition of Water Rights Under New Mexico Law

In 1994, Plaintiffs Roy Walker and Shellie Walker (together, "the Walkers") purchased approximately 40 acres in Grant County, New Mexico, from Crecencio (Chris) and Nellie Dominguez.  Compl. ¶¶ 8-9 (Doc. 1); Declaration of Shellie Walker ¶¶ 3-5 (July 19, 2004) (Doc. 18) (hereinafter "Walker Decl.").  Also in 1994, the Walkers purchased an additional 160 acres in Grant County from Louis and Myrtle Oliver.  Compl. ¶¶ 7-8; Walker Decl. ¶¶ 7-9.  Plaintiffs allege that, at the time they purchased this property from the Dominguezs and the Olivers, they

> also acquired rights to water in New Mexico, which rights are appurtenant to [their] ranch.  Among the water rights acquired by plaintiffs are rights to waters originating in or found in the Cold and Hot Springs Allotments.  The water rights were lawfully acquired by plaintiffs' predecessors-in-interest or by plaintiffs. Plaintiffs have all rights to said water for all purposes.  Defendant has no legal or equitable right or interest in said water.

Compl. ¶ 10.  The Cold and Hot Springs Allotment is located within the exterior boundaries of the Gila National Forest in New Mexico.  Compl. ¶ 8.

Attached to Shellie Walker's declaration are affidavits from Chris Dominguez and Louis Oliver.  Walker Decl., Exhibits C & G.  The Dominguez affidavit states that Dominguez "used or possessed the water rights listed here and was in continuous use of them on the Hot Springs Allotment from October 1971 to December 1994, at which time the Hot Springs Allotment was sold to Roy and Shellie Walker."  Id., Exh. C.  The Oliver affidavit states that Oliver "used or possessed the water rights listed here and was in continuous use of them on the Cold Springs Allotment from 1971 to 1994, at which time the Cold Springs Allotment was sold to Roy and Shellie Walker."  Id., Exh. G.

4

B.     Plaintiffs' Takings Claims

On February 5, 2004, the Walkers filed their Complaint in the Court of Federal Claims.
In this Complaint, the Walkers allege a taking of their ranch, which encompasses the property
that they own in fee, and appurtenant water rights, grazing or forage rights and access rights on
the Cold and Hot Springs Allotment in the Gila National Forest.[4]  The water rights that Plaintiffs
allegedly own are "rights to waters originating in or found in the Cold and Hot Springs
Allotments."  Compl. ¶ 10.  Plaintiffs allege that the grazing or forage rights allegedly taken are
appurtenant or attendant to these alleged water rights and the right to access those water rights.
See Plaintiff-Appellants' Brief-in-Chief before the N.M. Supreme Court at 1 (dated March 9,
2006) (explaining that Plaintiffs allege a taking of certain rights that they claim are appurtenant
to those water rights, including "the attendant right to graze in the vicinity of the water sources
and along the rights of way within the allotment") (excerpt of brief attached as Def. Ex. 24);
Plaintiff-Appellants' Reply Brief before the N.M. Supreme Court at 5 (dated Aug. 30, 2006)
("The Walkers claim that New Mexico law recognizes a forage right implicit in a vested water
right which has its beneficial use basis in stockwatering.") (excerpt of brief attached as Def. Ex.
32).  In addition, Plaintiffs claim that their ranch or base property has been taken because the
alleged taking of Plaintiffs' water rights and the attendant forage and access rights deprives them

_____

[4]Plaintiffs' Complaint also included claims for a taking of their grazing permits and their
grazing preferences in the Allotment, as well as a separate claim for compensation for range
improvements under 43 U.S.C. § 1752(g).  Plaintiffs' claim for a taking of their grazing permit
and grazing preferences in the Allotment was dismissed on the ground that the Walkers do not
have a protected property interest in their grazing permit or any grazing preferences.  Walker I,
66 Fed. Cl. at 67.  The Court also determined that Plaintiffs do not have an ownership interest in
the surface estate of the allotment.  Id. at 65-66.  Finally, Plaintiffs' claim for compensation
under 43 U.S.C. § 1752(g) was dismissed by the Court as time-barred.  Id. at 65.  This motion is
directed to Plaintiffs' remaining claims.

of all economically viable use of the ranch.  Compl. ¶ 33.

C.    Prior Proceedings

1.    The Supreme Court of New Mexico's Decision on the Certified Questions of State Law

In prior proceedings, the Court determined that appropriative water rights and rights-of-way for the maintenance and enjoyment of such water rights are recognized under New Mexico law as independent property interests.  Walker II, 69 Fed. Cl. 222, 229-31 (2005).  The Court also determined that the bare allegations in Plaintiffs' Complaint that they possess such rights, and that those rights have been taken, are sufficient to withstand a motion to dismiss.  Id. at 226-31.  However, the Court was unable to determine whether a forage right is implicit in a vested water right or a related right-of-way under New Mexico law.  Id. at 232.  Accordingly, the Court certified the following two questions to the Supreme Court of New Mexico:

1.  Does the law of the State of New Mexico recognize a limited forage right implicit in a vested water right?

2.  Does the law of the State of New Mexico recognize a limited forage right implicit in a right-of-way for the maintenance and enjoyment of a vested water right?

Id. at 232-33; Certification Order, dated Oct. 31, 2005 (Doc. 35).  In answering the two questions certified by this Court, the Supreme Court of New Mexico assumed, without deciding, that the Walkers' possessed the predicate vested water rights and rights-of-way under New Mexico state law.  Walker IV, 162 P.3d 882, 885 (N.M. 2007).

The New Mexico Supreme Court described the first question that it had to answer as "whether the Walkers have a property right cognizable under state law as an incident to [their] water right to use the surface estate of the allotments for forage."  162 P.3d at 885.  In

6

considering this question, the state court examined both New Mexico state law regarding water rights and the "customary practice" relied upon by the Walkers to support their assertion that the acquisition of water rights that they put to beneficial use for livestock purposes on the Allotment gave them an appurtenant right to graze their livestock at the water sources on the Allotments. The state court concluded that "neither the laws of New Mexico nor customary practice support the Walkers' claim to an implicit 'possessory' right to graze on the public domain that attaches to their water right." Id. at 895.  In reaching this conclusion, the state court reviewed the prior appropriation doctrine under New Mexico law, noting that water rights are generally separate and distinct from rights in land.  Id. at 888-89.  Accordingly, the court found that the loss of permission to graze cattle on federal lands does not have the effect of terminating the Walkers' water rights for non-use or destroying the value of those water rights.  As the court explained, "the value of the Walkers' water right does not depend entirely on stock watering at the same location; the right can be severed from the allotments, moved to other lands, used for other purposes, or even sold."  Id. at 891-92.

The New Mexico Supreme Court also held that state law does not recognize a limited forage right implicit in a right-of-way for the maintenance and enjoyment of a vested water right. The state court held that "a right-of-way over private property for the use of a water right is limited to 'storage or conveyance' of the water.  If an easement over private land is so limited under New Mexico law, an easement over public lands should not be interpreted more broadly." Id. at 896.  The court thus concluded that "while the Walkers might, at least in theory, have the right to move their water to their cattle, it is outside the scope of any statutory right-of-way to move cattle to the water, and incidentally have them graze along the way."  Id.

7

The New Mexico Supreme Court's decision in this case was issued on June 21, 2007, and on July 10, 2007, the court issued a mandate remanding the matter to this Court "for further proceedings consistent and in conformity with the opinion of this Court."  Walker v. United States, No. 29,544, Mandate (N.M. July 10, 2007).

    2.    The Prior State Adjudication of Plaintiffs' Alleged Water Rights

The water rights allegedly acquired by the Walkers' predecessors under New Mexico law and sold to the Walkers in 1994 are, with one exception, located within the Mimbres River Stream System and the Mimbres Underground Water Basin in New Mexico.[5]  Prior to the Walkers' 1994 purchase of property from the Dominguezes and the Olivers, including the alleged purchase of water rights, the Mimbres River Stream System and the Mimbres Underground Water Basin were the subject of an adjudication in the New Mexico state courts, titled Mimbres Valley Irrig. Co. v. Salopek, et al., No. 6326 (6th Judicial Dist., Luna County, NM) ("Mimbres adjudication").

The Mimbres adjudication was initiated in 1966 "as a private action to enjoin alleged illegal diversions of the Rio Mimbres which flows through the Gila National Forest in southwest New Mexico."  Mimbres Valley Irrig. Co. v. Salopek, 564 P.2d 615, 615 (N.M. 1977), aff'd sub nom. United States v. New Mexico, 438 U.S. 696 (1978).  In 1970, the New Mexico State Engineer intervened and the action was converted to a general statutory adjudication under New Mexico law "to determine the exact rights of each user to water from the Rio Mimbres." United States v. New Mexico, 438 U.S. at 698.  The defendants named in the State Engineer's

_____

[5]The one exception is a single water right allegedly owned by the Walkers on the allotment that is located in the Rio Grande water system.  As explained *infra* at pp. 28-29, this system is the subject of a separate general stream adjudication under New Mexico law.

complaint-in-intervention were "all parties claiming any interest in and use of the waters of the Rio Mimbres." Mimbres Valley Irrig. Co., 564 P.2d at 615. The United States was joined as a defendant under the McCarran Amendment, 43 U.S.C. § 666. Id.

The Walkers' predecessors-in-interest participated as defendants in the Mimbres adjudication, and their rights to use the waters of the Mimbres system were determined in this adjudication. On November 5, 1974, the state court issued an order addressing the rights of Dominguez to divert and use the waters of the Mimbres River Stream System and Underground Water Basin. Def. Ex. 25 (Order, Case No. 6326, Sub-File No. 672, Defendant Dominguez). The state court determined that Dominguez had a right to divert and use certain surface waters of the Mimbres River System to irrigate a small parcel of land. Id. Neither the water source nor the land to be irrigated are located within the subject allotment. The order further found that,

> The defendant [Dominguez] has no surface or underground water rights in the Rio Mimbres Stream System and/or the Mimbres Underground Water Basin, other than those referred to in this Order and those other Orders entered by this Court in this cause regarding other lands owned by the said defendant in the said stream system or basin.

Id. Finally, the order permanently enjoined Dominguez "from any use of the public surface or underground waters of the Rio Mimbres Stream System and/or the Rio Mimbres Underground Water Basin, except in strict accordance with the water right described herein." Id.

On August 24, 1987, the state court issued an order in the Mimbres adjudication addressing the water rights of defendant Louis Oliver. Def. Ex. 26 (Order, Case No. 6326, Sub-File No. 761, Defendant Oliver). The state court determined that Oliver had a right to divert and use a specified quantity of water from the Mimbres Underground Water Basin to irrigate approximately 3.3 acres of land identified in the order. Id. Neither the water source nor the

9

lands to be irrigated are located within the subject allotment.  Like the order governing

Dominguez' water rights, this order also states that Oliver has "no surface or underground water

rights in the Rio Mimbres Stream System and/or the Mimbres Underground Water Basin," other

than those referred to in the orders issued by the state court in the adjudication.  Id.  The order

also permanently enjoins Oliver "from any use of the public surface or underground waters of the

Rio Mimbres Stream System and/or the Rio Mimbres Underground Water Basin, except in strict

accordance with the water right described herein."  Id.

The adjudication also encompassed the water rights held by the United States within the

Rio Mimbres Stream System and the Mimbres Underground Water Basin.  The water rights of

the United States are identified in an Amended Stipulation that was filed with the state court on

August 31, 1990.  Def. Ex. 27 (Amended Stip. on the United States' Water Rights Claims in

Case No. 6326, Subfile No. 914, Defendant United States); Def. Ex. 28 (Order approving

Amended Stipulation).  The Amended Stipulation identifies 263 water rights acquired by the

United States under New Mexico state law, including rights to waters of the Mimbres River

stream system and underground basin that are located on the subject allotment.[6]  Id.

A final decree was entered in the Mimbres adjudication on January 14, 1993.  Def. Ex.

29.  This final decree expressly approves and confirms all of the "orders adjudicating the water

rights of each and every defendant in this case as against the State of New Mexico[,]" id. at 3,

including the orders adjudicating the water rights of Dominguez, Oliver, and the United States

---

[6]The history of the United States' claim to water rights in the Mimbres stream system was
the subject of extensive litigation prior to the filing of this Amended Stipulation.  For a summary
of that litigation history, including the 1990 stipulation between New Mexico and the United
States, see G. Emlen Hall, *The Forest Service and Western Water Rights: An Intimate Portrait of
United States v. New Mexico*, 45 NAT. RESOURCES J. 979 (2005).

that are discussed above.  The final decree also provides that "[c]laims to the right to divert or use the public waters of the Mimbres River Stream System and Mimbres Underground Water Basin not heretofore filed with the Court, shall not be adjudicated by the Court except as may be necessary for the correction of mistakes or omissions."  Id.  In addition, the final decree enjoins all defendants, as well as their successors, from any diversion or use of such waters "except in accordance with the adjudication orders and this decree."  Id.

II.    ARGUMENT

    A.    The Summary Judgment Standard

Summary judgment is a "salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action."  Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (internal quotation marks omitted).  In this regard, the summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

A party is entitled to summary judgment under RCFC 56 "when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law."  Avenal v. United States, 100 F.3d 933, 936 (Fed. Cir. 1996).  The party moving for summary judgment can meet its burden by showing that the nonmoving party has failed to establish an element of its claim.  Celotex, 477 U.S. at 322-23.  Once the moving party has satisfied this initial burden, the opposing party must establish a genuine issue of material fact and cannot rest on mere allegations, but must present actual evidence.  Anderson v. Liberty Lobby, Inc., 477 U.S.

11

242, 248 (1986).  In determining whether summary judgment is appropriate, "[f]actual disputes

that are irrelevant or unnecessary will not be counted."  Id.  See also Knieper v. United States, 38

Fed. Cl. 128, 134 (1997) ("Disputes which are not outcome determinative under the governing

law will not preclude the entry of summary judgment.").

> B.   Plaintiffs' Takings Claims Must Be Rejected Because They Cannot Establish The
>      Taking of Any Property Rights Protected by the Fifth Amendment

The first issue that must be addressed in every Fifth Amendment takings case is whether

the claimant has a protected property interest within the meaning of the Fifth Amendment.  See

Colvin Cattle Co., Inc. v. United States, 468 F.3d 803, 806 (Fed. Cir. 2006) ("under our

regulatory takings analysis, . . .the threshold inquiry is 'whether the claimant has established a

"property right" for purposes of the Fifth Amendment.'" (citations omitted)); Air Pegasus of

D.C., Inc. v. United States, 424 F.3d 1206, 1212 (Fed. Cir. 2005) ("First, as a threshold matter,

the court must determine whether the claimant has established a property interest for purposes of

the Fifth Amendment.").  It is well established that the plaintiff bears the burden of proving that

he possesses a legally-cognizable property interest.  Skip Kirchdorfer, Inc. v. United States, 6

F.3d 1573, 1580 (Fed. Cir. 1993).  The question of whether a plaintiff has such a property

interest presents "a question of law based on factual underpinnings."  Walcek v. United States,

303 F.3d 1349, 1354 (Fed. Cir. 2002) (citing Wyatt v. United States, 271 F.3d 1090, 1096 (Fed.

Cir. 2001), cert. denied, 535 U.S. 1077 (2002)).  In addition, the threshold issue of whether a

plaintiff possesses the protected property interest it alleges to have been taken must be addressed

before the parties and the court reach the question of whether the government's action resulted in

a taking of a protected property interest.  Air Pegasus, 424 F.3d at 1213 (holding that the court

12

does not reach the question of whether a taking occurred "without first identifying a cognizable property interest").

Here, the decision of the New Mexico Supreme Court on the questions certified to it by this Court establishes conclusively that Plaintiffs do not have a forage right that is implicit in any vested water rights that they have on the Allotment or in any right-of-way for the maintenance and enjoyment of such water rights.  In addition, Plaintiffs do not actually have any vested water rights recognized under New Mexico law on the Allotment.  Plaintiffs' lack of a protected property interest in this case requires dismissal of their claim that their water rights, access rights and related forage rights have been taken.

> 1.      Plaintiffs' Claim That Their Forage Rights Have Been Taken Must Be
> Rejected Because The New Mexico Supreme Court Has Determined That
> Plaintiffs Do Not Have Such A Right

Plaintiffs allege that they possess a forage right or right to graze their livestock on federal lands that is appurtenant to or implicit in their water rights as a matter of New Mexico state law. See Compl. ¶¶ 8-10, 30-32; see also Plaintiff-Appellants' Brief-in-Chief before the Supreme Court of New Mexico, at 1 (filed March 9, 2006) (explaining that Plaintiffs allege a taking of certain rights that they claim are appurtenant to those water rights, including "the attendant right to graze in the vicinity of the water sources and along the rights of way within the allotment") (Def. Ex. 24).  Because the Court was unable to identify any case where the Supreme Court of New Mexico directly had addressed "whether a forage right, limited or otherwise, is implicit in a vested water right or related right-of-way[,]" it certified those questions to the Supreme Court of New Mexico.  Walker II, 69 Fed. Cl. at 232-33.  The questions presented in this Court's certification order were:

13

> 1. Does the law of the State of New Mexico recognize a limited forage right implicit in a vested water right?
>
> 2. Does the law of the State of New Mexico recognize a limited forage right implicit in a right-of-way for the maintenance and enjoyment of a vested water right?

Id.; Certification Order, dated Oct. 31, 2005 (Doc. 35).

Pursuant to NMRA Rule 12-607, the Supreme Court of New Mexico accepted certification of this Court's two questions by its order of December 8, 2005. Following comprehensive briefing by the parties, the submission of briefs on behalf of seven amicus curiae including the New Mexico State Engineer,[7] and oral argument, the Supreme Court of New Mexico issued is written decision on June 21, 2007, answering both questions certified to it in the negative. Walker IV, 162 P.3d 882, 884 (N.M. 2007). For both questions, the court assumed, without deciding, that the Walkers possessed valid water rights under state law. Id., 162 P.3d at 885. In addition, for the second question, the court further assumed, without deciding, that the Walkers have a valid right-of-way under state law developed for the use and enjoyment of their water rights. Id. at 895.

On the first question, the court held that the owners of a water right historically used for stock watering purposes on the public domain do not have a property right cognizable under New Mexico state law as incident to such a water right to use the surface estate of those public lands for forage. Id., 162 P.3d at 885-95. The court found that the Walkers' contrary theory – upon which all of its takings claims in this case are based – was flawed because: (1) water rights in New Mexico are not tied to a particular location or even a particular source (id. at 890-91),

---

[7] A list of the amicus curiae participants before the New Mexico Supreme Court is found in the published copy of the court's decision at 162 P.3d at 883-84.

meaning that any water rights exercised on the Allotments "can be severed from the allotments, moved to other lands, used for other purposes, or even sold" (id. at 892); and (2) "the requirement that water must be put to beneficial use does not give rise to an interminable right to continue that same beneficial use[,]" meaning that the Walkers had no right to continue their beneficial use of their alleged water rights for stock watering on the Allotment once they lost the license that permitted them to graze their livestock on that Allotment (id. at 892). The court therefore held "that neither the laws of New Mexico nor customary practice support the Walkers' claim to an  implicit 'possessory' right to graze on the public domain that attaches to their water right." Id. at 895.

The court also rejected the Walkers' theory that they have an implicit right to graze their livestock within or along any rights-of-way developed for the enjoyment of water rights on the Allotment. Id., 162 P.3d at 895-96. The court emphasized that rights-of-way over both private lands and public lands for the use of a water right are limited under state law to "storage or conveyance" of the water, and therefore do not include a right "to move cattle to water, and incidentally have them graze along the way." Id. at 896. The court therefore held "that the laws of New Mexico do not support the Walkers' claim to a forage right on federal lands implicit in their right-of-way for the maintenance and enjoyment of a vested water right." Id.

The decision of the Supreme Court of New Mexico on the questions certified to it by this Court rejects the legal theory relied upon by the Plaintiffs to establish a protected property right to graze livestock on the Allotment that is implicit in their water rights (if any) and related rights-of-way (if any). The Supreme Court of New Mexico's decision is binding in this case on the certified questions of state law, and those issues cannot be relitigated here by Plaintiffs. See

Nat'l Educ. Ass'n, Inc. v. Lee County Bd. of Public Instruction, 467 F.2d 447, 450 (5th Cir. 1972) (holding that the Supreme Court of Florida's decision on questions certified to it by a federal court "must necessarily be conclusive" on those state law questions in further proceedings before the federal court (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)); Nat'l Railroad Passenger Corp. v. Rountree Transport and Rigging, Inc., 422 F.3d 1275, 1282 (11th Cir. 2005) ("In this circuit, a state supreme court's answer to certified questions is "conclusive" on the issue certified.").  See also 17A WRIGHT, MILLER & COOPER, FED. PRACTICE & PROCEDURE, JURIS.3d § 4248 ("Certification would be a pointless exercise unless the state court's answers are regarded as an authoritative and binding statement of state law.").  Alternatively, Plaintiffs are collaterally estopped from relitigating the issues presented to the Supreme Court of New Mexico and decided by that court in the certification proceedings.  See Carson v. Dep't of Energy, 398 F.3d 1369, 1375 (Fed. Cir. 2005) (explaining that direct or collateral estoppel forecloses the "relitigation of a matter that has been litigated and decided").

Accordingly, Plaintiffs do not have a protected property right that allows them to graze livestock on the Allotment.  Having failed to establish that they possess such property rights, their claims that such rights have been taken from them in this case must be denied.

> 2.    Plaintiffs' Claim That Their Water Rights Have Been Taken Must Be Rejected Because, Contrary to Their Allegations, They Do Not Possess Vested Water Rights Under New Mexico Law on the Allotment

The first cause of action set forth in Plaintiffs' Complaint alleges a taking of Plaintiffs' water rights, along with attendant access rights and forage rights.  Compl. ¶¶ 30-32.  The water rights allegedly taken are identified in the Complaint as follows:

> [a]mong the water rights acquired by plaintiffs are rights to waters

16

> originating in or found in the Cold and Hot Springs Allotments.  The water
> rights were lawfully acquired by plaintiffs' predecessors-in-interest or by
> plaintiffs.  Plaintiffs have all rights to said water for all purposes.
> Defendant has no legal or equitable right or interest in said water.

Compl. ¶ 10.  Plaintiffs further allege that these vested water rights were established under New

Mexico's prior appropriation doctrine, and that they acquired these water rights when they

purchased their ranch or base property in 1994.  Compl. ¶¶ 17-18; see also Pls.' Opp. to Def.'s

Mot. to Dismiss at 2 (July 20, 2004) (Doc. 17) (stating that, as part of their purchase of land from

their predecessors, "the Walkers obtained all available water rights for all purposes" on the base

property acquired in fee and on the Cold and Hot Springs Allotment); id. at 9 (stating that

Plaintiffs' water rights are "superior to any rights the United States can assert").

In asserting that they are the owners of vested water rights under New Mexico law that

are located on the Allotment, Plaintiffs omit from their Complaint, from Shellie Walker's

Declaration, and from all other submissions to this Court, any reference to the fact that their

alleged water rights are located within the Rio Mimbres water system and that this entire system

– both surface and underground water – had been adjudicated under New Mexico law and that

the water rights at issue in the adjudication were awarded to the United States.[8]  As set forth

---

[8]Although the New Mexico Supreme Court did not decide whether the Walkers had valid
water rights under state law, the court acknowledged this "important issue" and noted that,

> [t]here is a serious dispute whether the Walkers have any valid
> water rights because the water on the allotments is part of the
> Mimbres River Stream System and the Mimbres Underground
> Water Basin, both of which have been fully and finally adjudicated
> by the New Mexico courts.  See Mimbres Valley Irrigation Co. v.
> Salopek, D-619-CV-66006326 (6th Jud.D.Ct. Jan 14, 1993).

Walker IV, 162 P.3d at 885 n.2.

below in Section II.B.2.a.-b., this critical omission is fatal to their takings claims.

In addition, to the extent that Plaintiffs are claiming ownership of a few limited water rights that were not subject to the state adjudication, Plaintiffs cannot meet their burden of proving that they possess vested water rights on the Allotment under state law.  See Section II.B.2.c.

a.  The Mimbres Adjudication

All surface and underground waters within New Mexico belong to the public.  N.M. Const. art. XVI, §2; NMSA 1978 § 72-1-1; NMSA 1978 § 72-12-1.   However, such waters are "subject to appropriation for beneficial use, in accordance with the laws of the state."  N.M. Const. art. XVI, §2; NMSA 1978 § 72-1-1; NMSA 1978 § 72-12-1.  See also Walker IV, 162 P.3d at 888 ("The prior appropriation doctrine governs water law in New Mexico."); Diamond Bar Cattle Co. v. United States, 168 F.3d 1209, 1213 (10th Cir. 1999) ("In New Mexico, water rights are obtained and governed by the doctrine of prior appropriation").

In 1907, New Mexico established a comprehensive water code that governs all aspects of the appropriation of water and acquisition of water rights in New Mexico.[9]  NMSA 1978, § 72-1-1 - 10.  See Harkey v. Smith, 247 P. 550, 551 (N.M. 1926) (New Mexico's 1907 statute is "a comprehensive act" that "regulat[es] the acquisition, means, and manner of enjoyment of water rights").  This water code includes a process for adjudicating the water rights of an entire stream

---

[9]In New Mexico, as in other western states that follow the prior appropriation doctrine, the establishment of a water right "is a process that takes a period of time."  Hanson v. Turney, 94 P.3d 1, 3 (N.M. Ct. App. 2004).  A water right is acquired by perfecting the appropriation, which requires an actual diversion of water and the application of that water, within a reasonable amount of time, to a beneficial use.  Id. at 4 (citing Holguin v. Elephant Butte Irrig. Dist., 575 P.2d 88, 92 (N.M. 1977)).  After 1907, no public waters could be appropriated without a permit from the state.  Id. at 3-4; see also NMSA 1978, § 72-1-2; § 72-9-1; § 72-12-1.

system.  See, e.g., NMSA 1978, § 72-4-15, 72-4-17, 72-5-21, 72-5-22.

General stream adjudications under New Mexico law are intended to be comprehensive.

As explained by the Supreme Court of New Mexico, in such an adjudication, "stream systems as

a whole are to be surveyed.  All rights in the stream system are to be adjudicated.  All claimants

are to be parties." El Paso & R. I. Ry. v. Dist. Ct. of Fifth Judicial Dist. for Chaves County, 8

P.2d 1064, 1069 (N.M. 1931) (internal citations to statutory water code provisions omitted).  See

also State ex rel. Martinez v. City of Las Vegas, 89 P.3d 47, 66 (N.M. 2004) ("all water users

whose rights may be affected must be joined" to a general stream adjudication under New

Mexico law).  This adjudication process has been described as "all-embracing because it requires

adjudication of all surface and groundwater hydrologically connected to the stream system."

Elephant Butte Irrig. Dist. v. Regents of N.M. State Univ., 849 P.2d 372, 376 (N.M. Ct. App.

1993) (citing State ex rel. Reynolds v. Sharp, 344 P.2d 943 (N.M. 1959)), cert. denied, 851 P.2d

481 (N.M. 1993).   This comprehensive and all-embracing system is also "designed to avoid

piecemeal litigation" and the problems that result therefrom, such as the issuance of conflicting

decrees by different courts or decrees covering less than all claims to the waters of a particular

stream system.  Martinez, 89 P.3d at 65 (citations omitted).  The comprehensive nature of general

stream adjudications under New Mexico law allows the United States to be joined as a defendant

to such proceedings under the McCarran Amendment.  United States v. City of Las Cruces, 289

F.3d 1170, 1191 (10th Cir. 2002).

As set forth above, all rights to the use of the waters of the Rio Mimbres stream system

have been finally determined as a matter of state law in such an adjudication.  The Mimbres

adjudication was initiated in 1966 as a private action between two water users, and was

19

converted to a general stream adjudication with the intervention of the State Engineer in 1970.

The State Engineer's complaint-in-intervention "named as defendants all parties claiming any

interest in and use of the waters of the Rio Mimbres." Mimbres Valley Irrig. Co., 564 P.2d at

615.  In accordance with New Mexico law, "the suit proceeded as a general statutory adjudication

of all the water rights on the stream system." Id.  The comprehensive nature of the Mimbres

adjudication is further evidenced by the fact that the United States was joined as a defendant to

this adjudication under the McCarran Amendment.[10] Id.

The Walkers' predecessors-in-interest – Dominguez and Oliver – were defendants in the

Mimbres adjudication.  In the course of this adjudication, orders adjudicating the water rights of

Dominguez and Oliver were issued.  The order adjudicating the water rights of Dominguez was

issued on November 5, 1974.  Def. Ex. 25 (Dominguez Order).  The state court determined that

Dominguez had a right to divert and use certain surface waters of the Mimbres River System to

irrigate a small parcel of privately owned land.  Id.  Dominguez was not awarded any water rights

on the subject Allotment, including those that are identified in the affidavit attached to Shellie

---

[10]The McCarran Amendment contains a waiver of sovereign immunity that allows the United States to be joined as a defendant in any suit "for the adjudication of rights to the use of water of a river system or other source[.]" 43 U.S.C. § 666.  In order for the United States to be joined as a defendant in such a suit, the adjudication must be a comprehensive and "adjudicate all of the rights of various owners on a given stream." Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 808 (1976).  "The clear federal policy evinced by [the McCarran Amendment] is the avoidance of piecemeal adjudication of water rights in a river system." Id. at 819.  General stream adjudications under New Mexico law have been recognized as comprehensive adjudications of all users' claims to a particular river system so that the United States can be joined as a defendant in such an adjudication under the McCarran Amendment. United States v. City of Las Cruces, 289 F.3d 1170, 1191 (10th Cir. 2002).

Walker's declaration and that were allegedly conveyed to the Walkers in 1994.[11]  <u>Compare</u> Def.
Ex. 25 (Dominguez Order) <u>with</u> Walker Decl., Ex. C (Dominguez affidavit).  The state court's
order further found that, "defendant [Dominguez] has no surface or underground water rights in
the Rio Mimbres Stream System and/or the Mimbres Underground Water Basin, other than those
referred to in this Order and those other Orders entered by this Court in this cause regarding other
lands owned by the said defendant in the said stream system or basin."  Def. Ex. 25.  Finally, the
order permanently enjoined Dominguez "from any use of the public surface or underground
waters of the Rio Mimbres Stream System and/or the Rio Mimbres Underground Water Basin,
except in strict accordance with the water right described herein."  <u>Id.</u>

Similarly, the order issued by the state court regarding Oliver's water rights determined
that Oliver had a right to divert and use a specified quantity of water from the Mimbres
Underground Water Basin to irrigate approximately 3.3 acres of privately owned land identified
in the order.  Def. Ex. 26 (Order, Case No. 6326, Sub-File No. 761, Defendant Oliver).
Moreover, Oliver was not awarded any water rights on the allotment, including those that are
identified in the affidavit attached to Shellie Walker's declaration and that were allegedly
conveyed to the Walkers in 1994.  <u>Compare</u> Def. Ex. 26 (Oliver Order) <u>with</u> Walker Decl., Ex. G
(Oliver affidavit).  The order determining Oliver's water rights also found that Oliver had no
other surface or underground water rights in the Rio Mimbres system, and permanently enjoined
Oliver "from any use of the public surface or underground waters of the Rio Mimbres Stream
System and/or the Rio Mimbres Underground Water Basin, except in strict accordance with the

---

[11]Notably, neither Dominguez or Oliver claim to have been the owners of the water rights
on the subject allotment under New Mexico law, nor do they claim to have sold or transferred
such rights to the Walkers in accordance with New Mexico law.  <u>See</u> Walker Decl., Ex. C & G.

water right described herein."  Def. Ex. 26.

Another issue resolved by the adjudication was "whether the water rights used by permittees of the United States Forest Service should be adjudicated to the permittee under the state law of prior appropriation or outright to the United States."  Mimbres Valley Irrig. Co., 564 P.2d at 619.   This issue was resolved in favor of the United States, and the water rights on the National Forest system lands that were developed for stock watering purposes were adjudicated to the United States instead of to the Forest Service's permittees, such as Dominguez and Oliver. The water rights awarded to the United States in the Mimbres adjudication are set forth in an Amended Stipulation that was filed with the state court on August 31, 1990, and approved by the state court on September 5, 1990.  Def. Ex. 27-28.  The Amended Stipulation identified 263 water rights acquired by the United States under New Mexico state law, including rights to waters of the Mimbres River stream system and underground basin that are located on the subject allotment. Id.

A final decree was entered in the Mimbres adjudication on January 14, 1993.  Def. Ex. 29.   This final decree expressly approves and confirms all of the prior orders adjudicating the water rights of Dominguez, Oliver and the United States.  Id. at 3.  The final decree also enjoins all defendants, as well as their successors, from any diversion or use of such waters "except in accordance with the adjudication orders and this decree."  Id.

        b.      The Walkers Have No Property Interest in the Water Rights That Were Awarded to the United States in the *Mimbres* Adjudication

As set forth above, the Walkers allege that their predecessors-in-interest acquired water rights on the Cold and Hot Springs Allotment under New Mexico law, and that they acquired

these water rights from Dominguez and Oliver when they purchased their ranch or base property in 1994.  Compl. ¶¶ 10, 17-18; Pls.' Opp. to Def.'s Mot. to Dismiss at 2 (July 20, 2004). Plaintiffs further allege that they "have all rights to said water for all purposes" and that the United States "has no legal or equitable right or interest in said water."  Compl. ¶ 10.

In making these allegations, which were accepted by this Court and formed the basis for the certification of related state law questions to the New Mexico Supreme Court, Plaintiffs omitted any reference to the Mimbres adjudication.  The United States, as well as Plaintiffs' predecessors-in-interest, Oliver and Dominguez, were defendants in that adjudication.  As a result of that adjudication, the water rights within the Rio Mimbres basin on the Gila National Forest that had been developed for stock watering purposes were awarded to the United States, not to permittees such as Oliver and Dominguez.  Def. Ex. 25–29.  Plaintiffs' predecessors-in-interest were awarded water rights appurtenant to certain privately owned land outside of the Gila National Forest, but they were not awarded any water rights on the Cold and Hot Springs Allotment.  Because Oliver and Dominguez were not awarded any water rights on the subject allotment under New Mexico law, they could not convey such rights to the Walkers.  See Klamath Irrig. Dist. v. United States, 67 Fed. Cl. 504, 535 (2005) (applying the venerable maxim, "*nemo dat qui non habet* . . .'one who does not have cannot give'" and holding that the plaintiff water users could not obtain a water right from an irrigation district that the district itself did not possess), appeal docketed, No. 07-5115 (Fed. Cir. May 16, 2007).  It follows that the Walkers did not acquire any vested water rights under New Mexico law from Dominguez and Oliver on the Cold and Hot Springs Allotment.

Moreover, Ralph Pope, the Rangeland Management Specialist on the Gila National

23

Forest, has undertaken a review of the documented waters present on the Cold and Hot Springs

Allotment.  Mr. Pope's analysis is set forth in his declaration, which is included in Defendant's

Appendix as Defendant's Exhibit 30 ("Pope Decl.").  Mr. Pope's analysis includes a comparison

of the documented waters present on the Cold and Hot Springs Allotment as evidenced by the

Forest Service's records of such information, the Amended Stipulation entered in the Mimbres

adjudication awarding certain water rights on the Gila National Forest to the United States (Def.

Ex. 28), and the Declaration of Shellie Walker and the Dominguez and Oliver affidavits attached

to that declaration.  Pope Decl. ¶¶ 10–26.  A review of Mr. Pope's analysis reveals that nearly all

of the water rights claimed by the Walkers in this case were at issue in the Mimbres adjudication

and were awarded to the United States in that adjudication.[12]

Stock Water Tanks.  Plaintiffs allege that they own the water rights associated with

certain stock water tanks on the allotment.  However, a comparison of the documents referenced

above shows that of the twelve stock tanks claimed by the Walkers in this case, ten of those tanks

were identified in the Mimbres adjudication and the water rights associated therewith were

awarded to the United States.  See Pope Decl. ¶ 17.  Accordingly, Plaintiffs do not possess any

water rights associated with those stock water tanks under New Mexico law.

Wells.  Plaintiffs allege that they own the water rights associated with a number of wells

that are located on the allotment.  However, a comparison of the relevant documents shows that

of the six wells claimed by the Walkers in this case, five of those wells were identified in the

Mimbres adjudication and the water rights associated therewith were awarded to the United

---

[12]Plaintiffs also lack a compensable property interest in the very small number of "water
rights" claimed by the Walkers that were not identified in Mimbres adjudication.  These alleged
water rights are discussed in Section II.B.2.c., *infra*.

States.  Id. ¶ 20.  Accordingly, Plaintiffs do not possess any water rights associated with those five wells under New Mexico law.

Springs.  Plaintiffs also allege that they own the water rights associated with various springs that have been identified on the allotment.  Once again, a comparison of the relevant documents demonstrates that Plaintiffs' allegation is unsupported.  A comparison of the relevant documents shows that ten of the springs claimed by the Walkers in this case were identified in the Mimbres adjudication and the water rights associated with those springs were awarded to the United States in the adjudication.  Id. ¶ 22.  Plaintiffs do not possess a vested water right under New Mexico law to these ten springs.

In sum, Plaintiffs allege that they acquired "all rights" to the same stock tanks, wells and springs that were identified in the course of the Mimbres adjudication, and that the United States "has no legal or equitable right or interest in said water." Compl. ¶ 10.  Contrary to this assertion, the water rights associated with the stock tanks, wells and springs that were identified on the Cold and Hot Springs Allotment during the course of the Mimbres adjudication, were awarded to the United States.  Accordingly, Plaintiffs do not own any of the water rights they allege to have been taken from them in this case that were the subject of the Mimbres adjudication.  Summary judgment should therefore be entered in favor of the United States as to Plaintiffs' takings claims, all of which are premised on the alleged ownership of water rights that, as a matter of law, belong to the United States.

        c.        <u>Plaintiffs Have Not Acquired Vested Water Rights to Any Other Waters on the Allotment Outside of the *Mimbres* Adjudication</u>

A review of Plaintiffs' submissions indicates that they are alleging ownership of a limited

number of water rights that were not identified in and adjudicated in the <u>Mimbres</u> adjudication. Plaintiffs, of course, bear the burden of proving that they own the vested water rights they allege to have been taken in this case.  <u>Skip Kirchdorfer</u>, 6 F.3d at 1580; <u>see also</u> <u>Illinois v. United States</u>, 15 Cl. Ct. 399, 410 (1988) ("[i]n order to make out a claim under the Takings Clause of the Fifth Amendment, plaintiff must establish that it was the owner of the property" allegedly taken).  As set forth below, Plaintiffs have not acquired vested water rights under New Mexico law to any waters on the allotment since the completion of the <u>Mimbres</u> adjudication.

First, as noted above, the acquisition of water rights under New Mexico law is governed by statute.  Individuals seeking to appropriate water after March 19, 1907 (the date New Mexico's water code was enacted), are required to seek a permit from the state engineer.  NMSA 1978, § 71-1-2.  <u>See also</u> <u>Elephant Butte Irrig. Dist.</u>, 849 P.2d at 375-76.  Since the <u>Mimbres</u> adjudication encompassed all water rights within the Mimbres water system that existed at the time of the adjudication, any water rights developed during or after the adjudication are subject to this permitting requirement.

Second, since the water rights Plaintiffs allege to own in this case are all located on the Cold and Hot Springs Allotment rather than on land that Plaintiffs own, Plaintiffs cannot obtain a permit from the state engineer without obtaining authorization from the United States, as the owner of the land where that water is located, to develop that water.  For example, NMSA 1978, § 72-12-1.2, which governs the issuance of permits for livestock wells, requires that, "as part of an application for livestock watering uses on state or federal lands, the applicant [must] submit[] proof that the applicant: A. is legally entitled to place livestock on the state or federal land where the water is to be used; and B. has been granted access to the drilling site and has permission to

26

occupy the portion of the state or federal land as is necessary to drill and operate the well."  An

applicant seeking to drill a well on privately owned land that the applicant is not the owner of is

subject to same proof of authorization requirement.  NMSA 1978, § 72-12-3.B.

Finally, establishing a water right under New Mexico law "is a process that takes a period

of time."  Hanson v. Turney, 94 P.3d 1, 3 (N.M. Ct. App. 2004).  Thus, even if Plaintiffs could

prove that they applied for and received a permit from the state engineer – which they cannot – a

water permit is not a vested water right under state law.  Instead, "[a] water permit is an inchoate

right, and 'is the necessary first step' in obtaining a water right."  Id.  Until the permittee

completes all of the steps necessary to acquire a water right under New Mexico's statutory water

code, that permittee will not be considered the owner of a water right under state law.  Id. at 3-4.

Applying these principles of state law to the remaining "water rights" allegedly owned by

Plaintiffs, it is clear that they do not possess vested water rights under New Mexico law to any of

the remaining water identified in their Complaint and other submissions to this Court.

Stock Water Tanks.  Plaintiffs appear to allege that they possess vested water rights

under New Mexico law to two stock water tanks that were not identified in the Mimbres

adjudication.  One of these two remaining tanks is the "Twin Calf Tank," which was developed

on the allotment in 1991, during the Mimbres adjudication.  Pope Decl. ¶ 18.  This tank was

identified as an existing range improvement in 1995 when the Forest Service issued a term

grazing permit to the Walkers for the Allotment.  Def. Ex. 1, p. 8.  Although the Walkers were

assigned maintenance responsibility for this and other existing range improvements, id. at 8-11,

the permit did not transfer ownership of these improvements or any water rights associated

therewith to the Walkers.[13]  See 36 C.F.R. § 222.3(b) ("Grazing permits and livestock use

permits convey no right, title, or interest held by the United States in any land or resources.").

Plaintiffs' bare allegation that they possess a vested water right in the Twin Calf Tank is contrary

to the terms of their grazing permit and federal regulation.  In addition, this allegation is not

supported by documentation necessary to establish that Plaintiffs or their predecessors-in-interest

acquired a vested water right associated with this tank under New Mexico law.

 The second "tank" identified by the Walkers is believed to be a sediment retention

structure built below the Royal John mine, and thus is not a water source developed for stock

watering purposes.  Pope Decl. ¶ 19.  Plaintiffs' bare allegation that they possess a vested water

right associated with this "tank" is unsupported and should be rejected.

Plaintiffs also allege that they possess a vested water right in connection with one

remaining well on the Cold and Hot Springs Allotment identified as "Test Well."  Defendant's

review reveals that the so-called "Test Well" "appears to be a mineral exploration core drill hole

that has never been developed into a producing water well."  Pope Decl. ¶ 21.  As explained

above, in order for the Walkers to prove that they have a vested water right under New Mexico

law in connection with this well, the Walkers would first need to establish that they or their

predecessors were authorized to construct this well on the subject allotment and this

authorization from the Forest Service provided that title to this range improvement would be

vested in them instead of the United States.  See 36 C.F.R. § 222.9 (Forest Service regulations

governing range improvements).  The Walkers would next need to establish that they filed a

---

[13]Plaintiffs' claim for compensation for the loss of any authorized range improvements on
the Allotment under 43 U.S.C. § 1752(g) due to the cancellation of their term grazing permit was
dismissed by the Court as time-barred.  Walker I, 66 Fed. Cl. at 65.

28

complete application with the State Engineer's Office pursuant to New Mexico law and received

a permit or other determination by the state.  See NMSA 1978, § 72-1-2; § 72-12-1; §§72-1-12.1

– 12.3.  Absent such proof, Plaintiffs' claim that they own the vested water rights associated with

the "Test Well" must be rejected.

Finally, Plaintiffs allege that they are the owners of vested water rights associated with

three springs that were not identified in the Mimbres adjudication.  Of these three additional

springs, two were developed on the allotment during the adjudication and the third spring is

located in the Rio Grande watershed, which is the subject of a separate general stream

adjudication under New Mexico law.  All three of these springs were identified in the Walkers'

term grazing permit as an existing range improvements.  Def. Ex. 1, pp. 9-11.  Again, although

the Walkers were assigned maintenance responsibility for these and other existing range

improvements, id. at 8-11, the permit did not transfer ownership of these improvements or any

water rights associated therewith to the Walkers.  Def. Ex. 1; 36 C.F.R. § 222.3(b).  As with the

Test Well discussed above, to establish that they have a vested water right under New Mexico

law in connection with these springs, Plaintiffs must show these springs were developed with

proper authorization from the Forest Service and that Plaintiffs or their predecessors applied for

and received a permit from the state for these springs, developed the springs in accordance with

state law, and have been awarded a water right.  Plaintiffs have not yet submitted such

documentation in this case, nor has Defendant located such documentation.

Plaintiffs also assert that they own vested water rights under New Mexico law in

connection with other springs that were not identified in the Mimbres adjudication.  See Pope

Decl. ¶ 24-25.  However, Defendant's investigation reveals that these are not developed springs,

but are instead intermittent water sources that are only present following recent precipitation

events.  Id.  Under New Mexico law, these types of springs are not considered public waters that

are subject to appropriation.  See Burgett v. Calentine, 242 P.2d 276, 276-77 (N.M. 1951)

(holding that small springs that do not flow in a natural channel off the lands where they appear

are not public waters subject to appropriation under state law).  See also NMSA 1978, § 72-1-1

("All natural waters flowing in streams and watercourses, whether such be perennial, or

torrential, within the limits of the state of New Mexico, belong to the public and are subject to

appropriation for beneficial use.").  Instead, such water "belongs to the owner of the land upon

which it is found."  Burgett, 242 P.2d at 277.  In this case, the United States is the owner of the

National Forest system lands on which the intermittent springs claimed by Plaintiffs are found.

Accordingly, Plaintiffs do not possess a vested water right to such waters under New Mexico

law.

       For the reasons explained above, to the extent that any waters have been developed on the

allotment during or after the Mimbres adjudication, Plaintiffs have not established that they have

acquired a vested water right to such waters under New Mexico law.  Accordingly, contrary to

Plaintiffs' repeated allegations and unsupported assertions in this case, a review of the orders

issued in the Mimbres adjudication, and a comprehensive comparison of the documents

submitted by Plaintiffs in support of their claim with the adjudication records, demonstrates that

the Plaintiffs do not possess vested water rights under New Mexico state law on the subject

Allotment.[14]  Because Plaintiffs cannot establish that they own vested water rights on the

_____

       [14]In addition to the documentation discussed above, Defendant located and reviewed
several "Declarations of Ownership" filed by the Walkers with the New Mexico State Engineer's
Office in January 1997, shortly after their term grazing permit was cancelled by the United

Allotments, Plaintiffs' claim that such rights have been taken fails as a matter of law.[15]

C.    Plaintiffs' Claim That Their Water Rights Have Been Taken Based on a Denial of Access Must Be Rejected

Assuming *arguendo* and for the purposes of this motion only that Plaintiffs can establish that they own state-law based water rights on federal lands within the Gila National Forest, Plaintiffs' claim that those water rights have been taken as a result of the cancellation of their term grazing permit must be denied because the cancellation of their grazing permit does not constitute a denial of access to those rights.

As set forth above, Plaintiffs' claim that their access rights have been taken appears to be dependent upon the assertion that their right to access water rights on the Allotment includes an implicit right to graze cattle on the lands they would use to bring their cattle to water sources on the Allotment.  This claim must be rejected because the New Mexico Supreme Court held in this case "that the laws of New Mexico do not support the Walkers' claim to a forage right on federal lands implicit in their right-of-way for the maintenance and enjoyment of a vested water right." Walker IV, 162 P.3d at 896.  In other words, because the Walkers do not have a right to bring their cattle to water on the Allotment, the cancellation of their term grazing permit did not "take"

_____

States.  Def. Ex. 17.  In these "declarations," the Walkers claim ownership of the same waters previously identified in the affidavits of Chris Dominguez and Louis Oliver.  Pope Decl. ¶ 15; compare Def. Ex. 31 (sample "declaration of ownership") with Pope Decl., Stock Tank Spreadsheet, entry for Upper Corral Tank).  As discussed above, the Walkers do not possess vested rights to such waters under New Mexico law.  The Walkers cannot acquire a vested right to waters that have been adjudicated to another party (here, the United States) simply by filing a "declaration of ownership" with the State.

[15]Plaintiffs' lack of vested water rights on the Allotment provides another reason, independent of those set forth in the New Mexico Supreme Court's decision in this case, to reject Plaintiffs' claim for a taking of grazing or forage rights they allege to be implicit in such water rights and in related rights-of-way.

31

such a right from them within the meaning of the Fifth Amendment.

To the extent that Plaintiffs are alleging a taking of their water rights and access rights that is independent of a grazing or forage right, that claim also fails.  Specifically, the cancellation of Plaintiffs' term grazing permit does not result in a taking of Plaintiffs' water rights because, under New Mexico state law, water rights "are not tied to a particular location or even a particular source."  Id., 162 P.3d at 890.  Instead, under the doctrine of prior appropriation, New Mexico treats vested water rights as protected property rights that "can be 'sold, leased, or transferred.'"  Id.(citations omitted).  In addition, under New Mexico law, the owner of a water right has an "inherent . . . right to change the place of diversion, storage or use of water if rights of other water users will not be injured thereby."  Clodfelter v. Reynolds, 358 P.2d 626, 629 (N.M. 1961) (quoting Lindsey v. McClure, 136 F.2d 65, 70 (10th Cir. 1943)).  The statutory provisions governing such changes in the place of use or the purpose of use include: NMSA 1978 § 72-5-23 (1985) (setting out the process for changing a place of use of a water right or the purpose of use); NMSA 1978 § 72-5-24 (1985) ("An appropriator of water may, with the approval of the state engineer, use the same for other than the purpose for which it was appropriated or may change the place of diversion, storage or use . . . ."); and NMSA § 72-12-7 (1985) ("The owner of a water right may change the location of his well or change the use of the water . . . .").

Accordingly, as the New Mexico Supreme Court explained in its decision, "the value of the Walkers' water right does not depend entirely on stock watering at the same location; the right can be severed from the allotments, moved to other lands, used for other purposes or even sold."  Id. at 891-92; see also id. at 896 (noting that "the Walkers might, at least in theory, have

32

the right to move their water to their cattle, [even though] it is outside the scope of any statutory

right-of-way to move cattle to the water, and incidentally have them graze along the way."").

Although Plaintiffs no longer have permission to graze livestock on the Allotment, the

cancellation of Plaintiffs' term grazing permit does not affect any rights that they may have under

state law to sever their alleged water rights from the Allotment and move the water to other

lands, nor does it affect any rights they may have under state law to sell, lease or transfer their

water rights.[16]  Plaintiffs' claim that their water rights or their right to access those water rights

has been taken by the government's cancellation of their term grazing permit must therefore be

denied.

Moreover, it is undisputed in this case that Plaintiffs have not attempted to access or use

their alleged water right through any means other than grazing livestock.[17]  Indeed, Plaintiffs

explained their failure to seek permission to move water off the Allotment in their filings with

the New Mexico Supreme Court as follows:

> The Walkers[sic] water rights consist of small sources throughout
> the grazing allotment and with no distribution system, other than
> grazing cattle.  It would be a logistical nightmare as well as
> economically prohibitive for a ranching family to move the water
> off the grazing allotment.

---

[16]In order to use National Forest System lands to access water rights for purposes other than grazing (such as constructing a pipeline or other water transmission facility), the owner of the water right must apply for and receive a special use permit from the Forest Service.  See 36 C.F.R. § 251.54 (setting forth the process for obtaining special use authorization).  The Walkers do not claim to have made such an application with respect to any water rights they claim to own on the Allotment, nor has Defendant located any such application.

[17]Plaintiffs do not allege in their Complaint or elsewhere that they have sought access to their water rights (other than through the grazing of livestock) or permission to move water off the Allotment, and that such permission has been denied.

Plaintiff-Appellants' Reply Brief at 8, N.M. S. Ct. Case No. 29,544 (dated August 30, 2006)

(Def. Ex. 32).  The fact that it might be both a "logistical nightmare" and "economically

prohibitive" for the Walkers to move their water off the Allotment to a location where they do

have a right to graze their livestock is a limitation that is inherent in any water rights that they

possess under New Mexico state law.  As the New Mexico Supreme Court correctly observed,

> In this case, the Walkers' ability to acquire and use their water
> right on the allotments was conditioned on the permission of the
> federal government to go on the land.  The Walkers were thus
> responsible for maintaining their license to graze on the public
> land, and since they lost that license, they cannot now rely on a
> right to continue a particular beneficial use to maintain the water
> right that they were able to acquire by way of government
> permission in the first place.  Because the Walkers chose not to
> comply with the government's permitting process, they took the
> risk of either forfeiting their water right through non-use or being
> forced to transfer, lease, or sell that right.

Walker IV, 162 P.3d at 892.  Simply stated, the circumstances that the Walkers find themselves

in with respect to any water rights they possess on federal lands within the Gila National Forest is

attributable to the limitations inherent in those water rights and loss of their term grazing permit.

These circumstances are not attributable to the actions of Defendant and do not constitute a

taking of Plaintiffs' water rights or access rights.  Accordingly, summary judgment should be

granted in favor of Defendant with respect to any remaining takings claim based on the alleged

denial of access to water rights on the Allotment.

     D.     There Has Been No Taking of Plaintiffs' Ranch

The final claim alleged in Plaintiffs' Complaint is that their ranch – the 40 acres that they

own in fee simple – has been taken because the taking of their water rights and attendant forage

and access rights deprives them of all economically viable use of the ranch.  Compl. ¶ 33.

Although this claim survived Defendant's prior motion to dismiss, the Court noted in its decision on that motion that "the Walkers face a heavy burden of proof to establish that the Government's actions interfered with 'reasonable investment-backed expectations' and rendered the Walker Ranch to have 'no economically viable use.'" Walker I, 66 Fed. Cl. at 67.

In alleging a taking of their ranch, Plaintiffs do not allege a physical taking of the Ranch by the Government, nor do they allege that the Government has regulated the use of the 40 acres that Plaintiffs acquired fee simple title to. Instead, Plaintiffs' claim that their ranch has been taken is derivative of their claims that their water rights on federal lands and appurtenant forage and access rights have been taken. See Compl. ¶ 33.C. (alleging that "[a] taking of said water, forage and grazing land rights deprives the ranch of all economically viable use").

The Federal Circuit's decision in Colvin Cattle Company v. United States, 468 F.3d 803 (Fed. Cir. 2006), is instructive with respect to Plaintiffs' claim that their ranch has been taken. There, as here, the plaintiff claimed a taking of its ranch and ranching operations based on the government's cancellation of its term grazing permit. 468 F.3d at 805-06. The Federal Circuit rejected this claim, holding "[t]hat the ranch may have lost value by virtue of losing the grazing lease is of no moment because such loss in value has not occurred by virtue of government restrictions on a constitutionally recognized property interest." Id. at 808 (citing United States v. Fuller, 409 U.S. 488, 493 (1973)).

Here, the New Mexico Supreme Court held that the Walkers do not have a forage or grazing right on federal lands that is implicit in any vested water rights that they own or implicit in a right-of-way for the maintenance and enjoyment of such water rights. In addition, this Court has held that Plaintiffs do not have a property interest in their grazing permit or in any preference

35

grazing rights related to that permit.  <u>Walker I</u>, 66 Fed. Cl. at 67.  In other words, the bundle of

sticks (or rights) associated with Plaintiffs' fee ownership of its 40-acre ranch does not include

the right to graze on the Allotment, nor does it include the right to bring their cattle to water

located on the Allotment, and to allow their cattle to forage on the way to and from that water.

Consequently, because Plaintiffs' claim that its ranch has been taken is premised on the loss of

"rights" which are not constitutionally protected property interests, that takings claim fails as a

matter of law.  <u>Colvin Cattle</u>, 468 F.3d at 808.

III.    <u>CONCLUSION</u>

    For the reasons set forth above, Defendant respectfully requests that the Court grant its

motion to for summary judgment as to Plaintiffs' remaining claims.

DATED: August 31, 2007                        Respectfully submitted,

                                              RONALD J. TENPAS
                                              Assistant Attorney General
                                              Environment & Natural Resources Division

                                              s/ Kristine S. Tardiff
                                              KRISTINE S. TARDIFF
                                              United States Department of Justice
                                              Environment & Natural Resources Division
                                              53 Pleasant Street, 4th Floor
                                              Concord, NH 03301
                                              Telephone No.: (603) 230-2583
                                              Facsimile No.:  (603) 225-1577
                                              E-mail: kristine.tardiff@usdoj.gov

<u>OF COUNSEL</u>:

MARY ANN JOCA
Assistant Regional Attorney
Office of the General Counsel
United States Dept. of Agriculture
P.O. Box 586
Albuquerque, N.M. 87103-0586