# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROY WALKER AND SHELLIE WALKER | ) | Case No. 04-155 L |
| | ) | |
| Plaintiffs, | ) | Judge Susan G. Braden |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Lyman D. Bedford
McQuaid Bedford & Van Zandt, LLP
221 Main Street, 16th Floor
San Francisco, CA 94105
Tel: (415) 905-0200
Fax: (415) 905-0202
E-mail: lbedford@mbvz.com

Attorney of Record for Plaintiffs

OF COUNSEL:
Michael J. Van Zandt
McQuaid Bedford & Van Zandt, LLP
221 Main Street, 16th Floor
San Francisco, CA 94105
Tel: (415) 905-0200
Fax: (415) 905-0202
E-mail: mvanzandt@mbvz.com

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.     The Walker Ranch . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.    The Mimbres Adjudication. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    III.   The Walkers' Water Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.     The Standard for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    II.    The Walkers Have Property Rights Protected By The Fifth Amendment. . . . . . 6

         A.    Factual Disputes Exist Regarding The Walkers' Water Rights
              Under The Mimbres Adjudication.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             1.    The United States Was Not Awarded All Of The Water
                   Rights In The Cold And Hot Springs Allotment . . . . . . . . . . . . . 9

             2.    The United States Has Not Provided Any Evidence That
                   It Is The Exclusive Owner Of Water Rights Listed In The
                   Amended Stipulation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

             3.    The Orders Regarding The Water Rights Of Dominguez
                   And Oliver Apply Only To Irrigation Water, Not Stock
                   Watering . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    III.   The Walkers' Right-Of-Way To Access Their Water Rights And The
          Economic Viable Use Of Their Ranch Have Been Taken.. . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## *Cases*

*United States v. New Mexico*
    438 U.S. 696 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 14

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nissan Fire & Marines Ins. Co., Ltd. v. Fritz Cos., Inc.*
    210 F.3d 1099 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Marshall v. East Carroll Parish Hosp. Service Distr.*
    134 F.3d 319 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Palucki v. Sears Roebuck & Co.*
    879 F.2d 1568 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*National Steel Corp. v. Golden Eagle Ins. Co.*
    121 F.3d 496 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Eastman Kodak Co. v. Image Technical Services, Inc.*
    504 U.S. 451 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*Adickes v. S.H. Kress & Co.*
    398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*Lake Nacimiento Ranch Co. v. San Luis Obispo County*
    841 F.2d 872 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 19

*Masson v. New Yorker Magazine, Inc.*
    501 U.S. 496 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 19

*Jennison v. Kirk*
    98 U.S. 453 (1878) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*California v. United States*
    438 U.S. 645 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Walker v. United States*
    162 P.3d 882 (N.M. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15, 18

*Mimbres Valley Irrig. Co. v. Salopek*
    90 N.M. 410 (N.M. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Burgett v. Calentine*
    242 P.2d 272 (N.M. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Pioneer Irrigation Dist.*
    157 P.3d. 600 (Idaho 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*KRM, Inc. v. Caviness*
    925 P.2d 9 (N.M App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lucas v. South Carolina Coastal Council*
    505 U.S. 1003 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Curtin v. Benson*
    222 U.S. 78 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Constitutions**

N.M. Const. art. XVI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10, 14

**Rules, Federal**

RCFC Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Statutes, State**

N.M. Stat. Ann. 1978 § 72-1-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

N.M. Stat. Ann. 1978 § 72-1-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

N.M. Stat. Ann. 1978 § 72-1-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

N.M. Stat. Ann. 1978 § 72-12-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

N.M. Stat. Ann. 1978 § 72-12-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

N.M. Stat. Ann. 1978 § 72-12-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

N.M. Stat. Ann. 1978 § 21-1-2 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Other Authorities**

G. Emlen Hall, *The Forest Service and Western Water Rights: An Intimate*
    *Portrait of United States v. New Mexico*
    45 Nat. Resources J. 979 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## INTRODUCTION

The United States seeks to terminate this case by way of a motion for summary judgment. As will be discussed at length below, there are numerous issues of disputed facts remaining in this case, which preclude the disposition of plaintiffs' claims in a summary fashion.

## STATEMENT OF FACTS

### I.        The Walker Ranch

Walker Ranch, which Roy Walker and Shellie Walker (together, "the Walkers") purchased in 1994, has, in large part, been in operation since 1888.  Declaration of Shellie Walker In Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss the Complaint for Lack of Jurisdiction, dated July 19, 2004. (Doc. 18) (hereinafter "Walker Decl."), ¶3–20.  The Ranch sits on 40 acres in Grant County, New Mexico, and is the base property for two grazing allotments – Hot Springs and Cold Springs.  Along with the Ranch, the Walkers also purchased water rights, range rights, forage rights, access rights, and range improvements on the base property as well as on the appurtenant grazing allotments, all of which were established under New Mexico law over 115 years ago.  Walker Decl. ¶21–24.  The allotments are on lands the United States Forest Service administers as part of the Gila National Forest, established by presidential proclamations in 1899, 1905, 1907, 1908 and 1910.  All of this land was ceded to the United States by the Treaty of Guadalupe Hidalgo, which ended the Mexican War on February 2, 1848.

The Walkers' rights extend back to the late 19th century, when cattle were first grazed on this land.  In 1897, C.A. Burdick sold to J.N. Upton all rights, title and interest in the Mimbres River Cattle Company, a cattle operation in Grant County.  Walker Decl. ¶14.  In 1896, R.H.

Spud sold an interest in the Mimbres River Cattle Company, which had been in operation in Grant County since 1888, to C.A. Burdick. J.N. Upton is the father of James E. Upton, the Walkers' predecessor in interest to the water rights and other historical rights. Walker Decl. ¶15, 18. As early as 1891, J.N. Upton and his family owned land in Grant County on which cattle was grazed, near the Mimbres river, within what is now the Cold and Hot Springs Allotments. Walker Decl. ¶18. The Uptons maintained a cabin on the Cold Springs Allotment which still stands and the Walkers still use. Walker Decl. ¶19.

Therefore, as early as 1888, the Walkers' predecessors-in-interest grazed cattle in the land currently designated as federal grazing allotments, where Plaintiffs have grazing rights and water rights. It was this grazing on these lands that established the Walkers' historical water, grazing, forage and access rights, created by and derived from state property law as confirmed by federal law. The Walkers ran cattle on both the Hot Springs and Cold Springs Allotments, beneficially using their New Mexico water rights to water the cattle while grazing.

## II.    The Mimbres Adjudication

The history of the Mimbres Adjudication is long and complicated. The dispute began in 1966 as a private action between ranchers and an irrigation company fighting over the water that flowed from Mimbres stream channels that fed the Mimbres River. G. Emblen Hall, *The Forest Service and Western Water Rights: An Intimate Portrait of United States v. New Mexico*, 45 Nat. Resources J. 979, 990 (2005). In summer of fall of 1966, more parties up and down the Mimbres River joined the lawsuit. *Id.* at 991. After four days of trial, the judge directed the New Mexico State Engineer's Office to survey all of the surface water rights of the Mimbres River stream system, including the land administered by the United States Forest Service. *Id.* at 991-992. In

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT     2

1970, three and a half years later, the State Engineer completed its inventory. The State Engineer investigators discovered over 900 additional claims to water rights to the Mimbres River stream system, including the Forest Service's water rights. *Id.* at 992. In 1970, the court granted the State Engineer's request to turn the original lawsuit into stream-system adjudication. *Id.* The court appointed a special master to act as a referee regarding disputes that might arise from the over 900 water rights that were recorded. *Id.* at 993.

Throughout the adjudication, the United States Forest Service claimed that they possessed "reserved" water rights not only for their primary purposes of preserving timber and securing favorable water flow in the Gila National Forest, but also for secondary uses such as aesthetic, recreational, wildlife-preservation, and stock watering purposes. The state of New Mexico disputed the United States claim for reserved water rights for these secondary usages. The dispute was resolved by the United States Supreme Court in *United States v. New Mexico*, 438 U.S. 696 (1978). The Court agreed with the state of New Mexico and limited the United States right to use water from the Mimbres stream system only where necessary to preserve the timber of the forest or to secure favorable water flows. *Id.* at 718.

After the Supreme Court decision, the United States, no longer with "reserved" water rights for secondary usages, began flooding the New Mexico State Engineer's Office with applications for appropriative rights for stock watering on National Forest lands. G. Emblen Hall, supra, at 1041. In 1990, the United States mass applications resulted in the Amended Stipulation on the United States' Water Rights Claim ("Amended Stipulation") (Def. Ex. 27). The Amended Stipulation was approved by the Mimbres court. (Def. Ex. 28). The Amended Stipulation provided a limited amount of water from 263 water sources to the United States for

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**      3

livestock and wildlife.  (Def. Ex. 27).  Nowhere in the Amended Stipulation or the order

approving it does it state that the limited water awarded to the United States constitutes the entire

amount available, or that the water rights are exclusive to any other claimant.

In 1993, the Mimbres court issued a Final Decree.  (Def. Ex. 29).   As stated in the Final

Decree, paragraph 3, the claimants involved in the Mimbres adjudication did not include those

using underground water exclusively for domestic or stock watering purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E. Reynolds, Sate
> Engineer, has served process on all known water claimants as can be discovered by
> reasonable diligence and who are claiming the right to divert or use the public waters of
> the Mimbres River Stream System or Mimbres Underground Water Basin, *except for
> those using underground water exclusively for domestic or stock watering purposes.*

(Emphasis added).

### III.    The Walkers' Water Rights

In 1994, when the Walkers purchased their ranch property from Crecencio and Neline

Dominguez ("Dominguez") and from Louis and Myrtle Oliver ("Oliver"), the Walkers also

obtained the 40 water rights.  See attached Declaration of Shellie Walker In Support of Plaintiffs'

Opposition to Defendant's Motion for Summary Judgment ("Walker MSJ Decl."), ¶3.   The 40

water rights sold to the Walkers from Dominguez and Oliver consisted of 22 springs (one is

referred to as a seep), 12 tanks (one is referred to as a dam) and 6 wells.  Walker MSJ Decl. ¶4.

The Walkers filed declarations of ownership with the New Mexico State Engineer for all 40

water rights.   Walker Decl. ¶5.  For the 22 springs, the  declarations of ownership are based on

the perfection of the water rights prior to March 19, 1907, the effective date for when the State of

New Mexico required application to the State Engineer for appropriation of water rights.

Exhibit A to Walker MSJ Decl.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT        4

The Walkers and their predecessors have made beneficial use of the water associated with the 40 water rights in dispute for stock watering purposes since 1888.  Walker Decl. ¶¶3–20; and Walker MSJ Decl. ¶14.  Although the United States claims it has been awarded some water rights under the Mimbres adjudication for stock watering purposes, the United States does not own any cattle.  The United States has never made beneficial use of the any water rights for stock watering the purposes for which the water rights were granted to the United States.

## ARGUMENT

### I.     The Standard for Summary Judgment

The standard for granting a motion for summary judgment and terminating an action without trial is when the court finds that "there is *no genuine issue as to any material fact and that the moving party entitled to judgment as a matter of law*."   RCFC 56(c) (emphasis added).  Because summary judgment is a drastic remedy, courts should proceed cautiously in granting it.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment . . .")

"A moving party without the ultimate burden of persuasion at trial – usually but not always the defendant – has both the initial burden or production and ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marines Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Evidentiary facts are required to support a summary judgment motion; conclusory statements are not sufficient.  *Marshall v. East Carroll Parish Hosp. Service Distr.*, 134 F.3d 319, 324 (5th Cir. 1998); *Palucki v. Sears Roebuck & Co.*, 879 F.2d 1568, 1572; and see also *National Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997).

Inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992). Even where basic facts are undisputed, summary judgment should be denied if reasonable minds could differ on the inferences to be drawn from those facts. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 875 (9th Cir. 1987). Therefore, where an opposing party's evidence or reasonable inferences from such evidence raises a "genuine dispute" as to any "material" fact raised by the moving party, summary judgment cannot be granted. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520-522 (1991).

## II.      The Walkers Have Property Rights Protected By The Fifth Amendment

Under the Mining Act of 1866 ("Mining Act") those who had rights under state and local law to use water or ditch rights of way located on federal land had those rights confirmed and protected. See 43 U.S.C. § 661 (1866); *Jennison v. Kirk*, 98 U.S. 453, 457 (1878) (the Mining Act gave "the sanction of the United States, the proprietor of the lands, to possessory rights, which had previously rested solely upon the local customs, laws, and decisions of the courts, and to prevent such rights from being lost on a sale of the lands."). The Walkers have property rights, including water rights, flowing from the Mining Act that are protected, independent rights. The Mining Act of 1866 acknowledged that settlers who had placed water to beneficial use under local law and custom are confirmed in those rights. *California v. United States*, 438 U.S. 645, 656 (1978).

"The prior appropriation doctrine governs water law in New Mexico." *Walker v. United States*, 142 N.M. 45, 162 P.3d 882, 888 (N.M. 2007); *See* N.M. Const. art. XVI, § 2 ("Priority of

appropriation shall give the better right."). "Under the doctrine of prior appropriation, water

rights are both established and exercised by beneficial use, which forms 'the basis, the measure

and the limit of the right to use water.'" *Id.* citing N.M. Const. art. XVI, § 3. The Walkers'

predecessors first appropriated and made beneficial use of the water in the Cold and Hot Springs

Allotments beginning in 1888. Walker Decl. ¶3–20; and Walker MSJ Decl. ¶14.

Under New Mexico's comprehensive water code that was established in 1907, all water

rights vested prior to March 19, 1907, shall "relate back to the initiation of the claim" and "shall

be recognized as of the same force and effect" as those filed after 1907. NMSA 1978 § 72-1-2

and § 72-1-4; *See* NMSA § 72-12-4 relating to underground water. Any person "claiming to be

an owner of a water right which was vested prior to the passage" of the 1907 water code, may

record their vested rights by filing a declaration of ownership with the state engineer. NMSA

1978 § 72-1-3; *See* NMSA § 72-12-4 and § 72-12-6 relating to underground water. Official

certified copies of such declarations "shall be prima facie evidence of the truth of their contents."

NMSA 1978 § 72-1-3; *See* NMSA § 72-12-5 relating to underground water. When the Walkers

purchased their ranch property, they also obtained 40 water rights. Walker MSJ Decl. ¶3. The

Walkers recorded their vested claims to these 40 water rights when they filed their declarations

of ownership with the New Mexico State Engineer under the procedures of New Mexico's water

code. Walker MSJ Decl. ¶5.

In its motion for summary judgment, the United States does not appear to dispute that the

Walkers possess vested water rights that were established under New Mexico's prior

appropriation doctrine, but argues that those water rights were subsequently awarded to the

United States under the Mimbres Adjudication. Defendant's Motion for Summary Judgment and

Memorandum in Support Thereof ("Defendant's MSJ"), pp. 17–18.

A.      **Factual Disputes Exist Regarding The Walkers' Water Rights Under The Mimbres Adjudication**.

The United States claims that the Mimbres adjudication settled the issue of who owns the

water rights located in the Gila National Forest.   Defendants MSJ, p. 23.   In its moving papers,

the United States cites *Mimbres Valley Irrig. Co. v. Salopek*, 90 N.M. 410, 414 (N.M. 1977) for

the proposition that "the water rights on the National Forest system lands that were developed for

stock watering purposes were adjudicated to the United States instead of to the Forest Service

permittees, such as [the Walkers' predecessors] Dominguez and Oliver."  Defendant's MSJ, p.

22.

The United States mis-interprets the New Mexico Supreme Court opinion.  In *Mimbres,*

the New Mexico Supreme Court stated:

> An additional matter raised in this appeal is whether the water rights used by
> permittees of the United States Forest Service should be adjudicated to the
> permittee under the state law of prior appropriation or outright to the United
> States. The prior discussion in this opinion reveals that the United States does not
> have reserved water rights in the forests for these permitted uses. It necessarily
> follows that water rights must be perfected and held by the permittee in
> accordance with state law.

*Mimbres Valley Irrig. Co.,* supra, 90 N.M. at 414 (N.M. 1977).

The *Mimbres* decision by the New Mexico Supreme Court in 1977, followed by the

United States Supreme Court decision in 1978 in *United States v. New Mexico*, 438 U.S. 696

(1978), established that the United States Forest Service does not have "reserved" water rights

for secondary uses such as aesthetic, recreational, wildlife-preservation, and *stock watering*

*purposes*. *Id.* at 716 (Emphasis added).  The Supreme Court held that "any stockwatering rights

must be allocated under state law to individual stockwaterers." *Id.* at 716.  The Walkers, in filing

their declarations of ownerships, perfected their water rights under New Mexico state law of

prior appropriation according to these opinions.  The United States, on the other hand, were not

awarded any such rights under their "reserved" water theory.

   After these decisions, the United States applied to the New Mexico State Engineer for

water rights in for stock watering in the Gila National Forest, including the Hot and Cold Springs

Allotment where the Walkers' predecessors continued make beneficial use of their water rights

for stock watering purposes.  G. Emblen Hall, supra, at 1041; Walker MSJ Decl. ¶14.  Years

later, in 1990, the United States were awarded a limited amount of water from 263 water rights

for stock watering and wildlife, as provided in the Amended Stipulation.  (Def. Ex. 27).

However, the Amended Stipulation did not cover all water rights that are in dispute in this case.

Factual disputes exist as to these water rights, and to those water rights for which the Walkers

claim a vested property interest and for which the United States alleges belong exclusively to the

Forest Service.

### 1.   The United States Was Not Awarded All Of The Water Rights In The Cold And Hot Springs Allotment

   In Defendant's Proposed Findings of Uncontroverted Fact, ¶16, the United States claims:

"In the Mimbres adjudication, the water rights within the Rio Mimbres basin on the Gila

National Forest that had been developed for stock watering purposes were awarded to the United

States."  Citing Def. Ex. 27–29.  This alleged "fact" is not only overbroad, lacking in foundation

and not supported by the evidence cited, but is also contradicted in the United States' moving

papers and the declaration of Ralph D. Pope.  The United States admits that there are a number of

water rights that were not subject to the Mimbres adjudication.  Defendants MSJ, p. 18; Pope Decl. ¶18–26.

Although, the United States asserts that "nearly all of the water rights claimed by the Walkers in this case were at issue in the Mimbres adjudciation," 13 water rights (consisting of 11 springs, 2 tanks and 1 well) of the 40 water rights in dispute in this case were not identified in the Amended Stipulation.  Defendant's MSJ, p. 24; Walker MSJ Decl. ¶9.  These 13 water rights were never awarded to the United States.  According to the United States, Rustler Spring is located in the Rio Grande watershed, which is not subject to the Mimbres adjudication. Defendant's MSJ, p. 29; Pope Decl. ¶23.

The United States claims that the Walkers never received permits from the New Mexico State Engineer under New Mexico law to use these 13 water rights.  Under New Mexico water code, however, the Walkers were not required to file permits because their water rights were perfected prior to March 19, 1907.  Walker Decl. ¶3-20; NMSA 1978 § 72-1-2; § 72-1-3; § 72-1-4; *See also* NMSA § 72-12-4;  § 72-12-5;  § 72-12-6.  The Walkers were only required to record their vested rights by filing a declaration of ownership with the state engineer which they did. Walker MSJ Decl. ¶5.  Contrary to United States' argument, the Walkers do not rely on water permits as the vehicle for their vested interest to these water rights.  Instead, the Walkers own these 13 water rights because their predecessors were the first to appropriate these water rights by putting them to beneficial use under New Mexico's doctrine of prior appropriation.  N.M. Const. art. XVI, §2–3.

Springs.  Of the 13 water rights that were not identified in the Mimbres adjudication, 11 of these were springs.  Walker MSJ Decl. ¶9.  As stated above, the United States' concedes that

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**      10

Rustler Spring is located in the Rio Grande watershed, which is not subject to the Mimbres adjudication.  According to the United States, Dead Man Spring and Maverick Spring were "developed" in 1986 and 1987 respectively, and this was the reason why they were not included in the Mimbres adjudication.  Defendant MSJ, p. 29; Defendant's Proposed Findings of Uncontroverted Fact, ¶25, citing Pope Decl. ¶23.  The Walkers dispute the United States characterization that these springs were "developed" in the 1980s.  Technically, springs are naturally existing and cannot be "developed" such as wells.  The United States has not provided any evidence, besides the declaration of Ralph D. Pope for why these springs were never adjudicated.  Mr. Pope's declaration lacks foundation as he provides no basis or evidence for his statement that "Dead Man Spring and Maverick Spring were developed in 1986 and 1987 respectively."  Pope Decl. ¶23.  The United States has not produce any other evidence for this assertion.

Of the remaining eight springs, the United States claims that, except for two, these springs were never "developed" and were only intermittent water sources.  Defendant's MSJ, p. 29–30; Defendant's Proposed Findings of Uncontroverted Fact, ¶28 [mis-numbered as ¶22 following ¶27], citing Pope Decl. ¶24–25.  Again, the Walkers dispute the idea that springs can be developed.  The Pope declaration relied on by the United States does not provide the foundation for his statement that these springs were only intermittent water sources.  See Pope Decl. ¶25.  Mr. Pope does not state that he personally observed these springs or that he reviewed any data regarding the water production from these springs.  Instead, he only states: "All of these springs except for Turkey Spring and Yellow Jacket Seep are not developed and are intermittent water sources only present following recent precipitation."  Pope Decl. ¶25.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**        11

The United States wants this court to believe that these springs were only intermittent water sources because then, according to Defendant, they are not subject to appropriation, but belong to the landowner upon which it is found.  Defendant's MSJ, p. 30, citing *Burgett v. Calentine,* 242 P.2d 272, 276-77 (N.M. 1951).  In this case, the landowner would be the United States Forest Service.  Although creative, this argument is flawed factually.  The Walkers dispute that these springs are intermittent water sources.  Walker MSJ Decl. ¶11.  Furthermore, contrary to its own argument, the United States separately claims that Hot Springs #2 (aka Upper Middle Hot Spring) has also never been "developed" and is also only a semi-permanent water source.  Pope Decl. ¶24.  However, Hot Springs #2 was subject to appropriation under the Mimbres adjudication.  *Id.*; Amended Stipulation ¶118.  Therefore, either United States' argument that intermittent water sources cannot be appropriated is incorrect or the factual basis that the United States relies on that these springs are only intermittent water sources is flawed.  Either way, there exists a genuine dispute as to the ownership to these springs, which cannot be summarily adjudicated.

Tanks.  Of the 13 water rights that were not identified in the Mimbres adjudication, two of these were tanks.  Walker MSJ Decl. ¶9.  The United States claims that Twin Calf Tank was developed in 1991 during the Mimbres adjudication.  Defendant's MSJ, p. 27; Defendant's Proposed Findings of Uncontroverted Fact, ¶19, citing Pope Decl. ¶18.  Again, the Pope declaration provides no foundation or evidence for why he believes this tank was constructed in 1991.  According to the Walkers' declaration of ownership, the Twin Calf Tank was constructed under the supervision of Louis Oliver and completed in 1978.  Exhibit A to the Walker MSJ Decl.  The conflicting evidence creates a genuine dispute as to a material fact, which cannot be

summarily adjudicated.

According to the United States, the Royal John Tank is sediment retention structure and not developed as water source for stock watering purposes.  Defendant's MSJ, p. 9; Defendant's Proposed Findings of Uncontroverted Fact, ¶20, citing Pope Decl. ¶19.  The Walkers object to this assertion and the evidence cited as speculation and lacking foundation.  As stated in his declaration, Mr. Pope only suspects that the Royal John Tank is a sediment retention structure.  Pope Decl. ¶19.  He has not provided any basis for his suspicion.  The United States construes this suspicion for fact.  Contrary to Defendant's assertion, the Walkers and their predecessors made beneficial use of the water from the Royal John Tank for stock watering purposes.  Walker MSJ Decl., ¶10.  Again, there exists a genuine dispute as to a material fact, which cannot be summarily adjudicated.

Wells.  Of the 13 water rights that were not identified in the Mimbres adjudication, one of these was the Test Well.  According to the United States, the Test Well "appears to be a mineral exploration core drill hole that has never been developed into a producing water well."  Defendant's MSJ, p. 28; Defendant's Proposed Findings of Uncontroverted Fact, ¶22, citing Pope Decl. ¶21.  The Walkers dispute this "fact" according to the United States.  The Walkers and their predecessors made beneficial use of the water pumped from the Test Well for stock watering purposes.  Walker MSJ Decl. ¶11.  The Walkers object to the Pope declaration as speculation and lacking foundation.  Mr. Pope only speculates that the Test Well was never developed into a water producing well.  He has not provided any basis for his suspicion.  The United States has not produce any other evidence for their assertion that this well never produced water.  In light of the genuine dispute as to this material fact, summarily judgment cannot be

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**     13

granted.

### 2. The United States Has Not Provided Any Evidence That It Is The Exclusive Owner Of Water Rights Listed In The Amended Stipulation.

As a result of the Supreme Court decision in *United States v. New Mexico*, 438 U.S. 696, 716 (1978), which determined that the United States Forest Service did not have "reserved" water rights for secondary uses such stock watering, the United States was forced to apply for water rights from the New Mexico State Engineer under the New Mexico water code. The United States applications for water rights resulted in the Amended Stipulation in which the United States was granted usage to a limited amount of water to 263 water rights in the Mimbres stream system. (Def. Ex. 27). Of the 40 water rights claimed by Walkers, 11 springs 10 tanks and 5 wells are identified in the Amended Stipulation. Walker MSJ Decl. ¶7.

Prior to United States application for these water rights, others like the Walkers' predecessors were already beneficially using the water since the 1800s for stockwatering purposes. As provided by the New Mexico constitution, water rights are established under the doctrine of prior appropriation, where "priority of appropriation shall give the better right." N.M. Const. art. XVI, § 2. The Walkers' predecessors, not the United States, were the first to make beneficial use of the water found on the Hot and Cold Springs Allotments. Therefore, it is only logical that the water rights granted to United States under Amended Stipulation were for a limited amount of water, and not at the exclusion of those already making beneficial use of the water.

The purpose for each of the water rights granted to the United States on the Amended Stipulation is for "livestock and wildlife" and that the amount of water awarded shall not exceed

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT      14**

a certain amount of acre-feet per year. (Def. Ex. 27). Although the United States asserts that it

was awarded sole ownership of these water rights, it has not provided any evidence that these

water rights are exclusive as to other claimants. Nor has the United States provided any evidence

that the amount of water awarded to it constitutes the entire amount of water available from each

water source.

The United States argues that as the result of the Mimbres adjudication all of the water

rights within "the Rio Mimbres basin on the Gila Naitonal Forest that had been developed for

stock watering purposes were awarded to the United States, not to permittees such as Oliver and

Dominguez." Defendant's MSJ, p. 23. Again, the United States mis-interprets the basis for the

Walkers claim of ownership to these water rights. The Walkers are not claiming that because

either they or the predecessors were permittees to use federal land, that those permits are the

bases for their water rights. The Walkers, have made beneficial use of the 11 springs 10 tanks

and 5 wells that are identified in the Amended Stipulation. Their predecessors have used these

water rights since 1888. Walker Decl. ¶3–26. The Walkers have perfected their vested water

rights by filing declarations of ownerships as to all 40 water rights they own, including the 26

water rights identified in the Amended Stipulation. Walker MSJ Decl. ¶5.

"Under the doctrine of prior appropriation, water rights are both established and exercised

by beneficial use . . . that right must be exercised or lost; one cannot sit on water rights to the

exclusion of any other claimant without putting them to beneficial use." *Walker v. United States*,

162 P.3d 882, 888-89 (N.M. 2007). The Walkers have established that they and their

predecessors have beneficially used the water from the 26 water rights identified in the Amended

Stipulation. Walker MSJ Decl. ¶14. The United States has not provided any evidence that it has

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**     15

done the same.  The United States does not own cattle.  There is no evidence that the United States has ever used the water for stock watering purposes, one of the reasons the state of New Mexico granted the water rights to the United States.  If the United States does not exercise their right to use the water for stock watering purpose, then it loses that right.  More importantly, it cannot sit on the stock watering rights granted by New Mexico to the exclusion of others like the Walkers.  The Walkers have continued to make beneficial use of the water, even after the Amended Stipulation in 1990 when Defendant argues it had exclusive water rights.

Therefore, because the United States has not provided any evidence that they are the exclusive owners of the water rights identified in the Amended Stipulation, a factual dispute exists as to whether the Walkers also have rights to these waters.  Because a genuine factual dispute exist, this issue is not proper for summary judgment.

Assuming *arguendo* that the United States are the owners of the 26 water rights in dispute, it may be only the legal tile holder to these water rights which are held in trust for beneficial users such as the Walkers.  See *United States v. Pioneer Irrigation Dist.,* 157 P.3d. 600, 601 (Idaho 2007).  In *Pioneer Irrigation*, the Idaho Supreme Court held that the United State Bureau of Reclamation had only nominal legal title to the water rights at issue and that equitable title rested with those landowners who made beneficial use of the water.  *Id.* at 609. Similar to the laws of New Mexico, the *Pioneer Irrigation* court noted that the right to use public water in Idaho is based on beneficial use.  *Id.* at 604.  The court found that while the United States managed and operated water storage facilities, it did not beneficially used the water.  *Id.* Therefore, under Idaho constitutional and statutory law, "title to the use of the water is held by the consumers or users of water."  *Id.* at 609.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**        16

Here, the Walkers, not the United States are the ones making beneficial use of the water rights provided in the Amended Stipulation.  As such, even if it is determined that the United States holds legal title to these 26 water rights, equitable title rests with the Walkers and those who are putting the water to beneficial use according the New Mexico's constitution.

### 3.  The Orders Regarding The Water Rights Of Dominguez And Oliver Apply Only To Irrigation Water, Not Stock Watering.

The United States argues that the Walkers' predecessors Oliver and Dominguez were defendants in the Mimbres adjudication and that in the course of the adjudication, their water rights were established.  Defendant's MSJ, p. 20–21, citing Def. Ex. 25 ("Dominguez Order") and Def. Ex. 26 ("Oliver Order").  The orders applied only to water for irrigation purposes only.  Stock watering was not mentioned in the orders.  The United States asserts that the Dominguez and Oliver orders represent the universe of water rights that were available to the Walkers' predecessors.  However, as stated in Final Decree, the claimants involved in the Mimbres adjudication did not include those using underground water exclusively for domestic or stock watering purposes.

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E. Reynolds, Sate Engineer, has served process on all known water claimants as can be discovered by reasonable diligence and who are claiming the right to divert or use the public waters of the Mimbres River Stream System or Mimbres Underground Water Basin, except for those using underground water exclusively for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

According to Final Decree, the Dominguezes and Olivers also retained water used exclusively for domestic and stock watering purposes, because these water rights were never adjudicated.  Given the United States position that the water rights of the Dominguezes and

Olivers were limited only to irrigation purpose, a genuine dispute exists as to whether the Walkers' predecessors also retained water rights for stock watering purposes.

The issue is further clouded by the distinct role of irrigation water in New Mexico. Water rights are generally separate and distinct from the land on which the water is used with the sole exception of water used for irrigation. *Walker v. United States*, 162 P.3d 882, 889 (N.M. 2007), citing *KRM, Inc. v. Caviness*, 925 P.2d 9 (N.M App. 1996). "Irrigation water rights are appurtenant to the land, meaning that any conveyance of the land will carry the water right unless the water right is expressly reserved by the grantor." *Id.*, citing NMSA 1978, § 21-1-2 (1953). Because of the relationship of irrigation water with the land on which it is used, the Dominguez and Oliver orders may have only meant to adjudicate their irrigation water rights.

This inference is supported by the fact that Dominguez and Oliver genuinely believed they retained their water rights in the Hot and Cold Springs Allotments. They continued to use their water rights in the allotments, even after the issuance of the orders and the Amended Stipulation. Walker Decl. ¶14. They provided affidavits to the Walkers stating that they used and possessed the water rights in the allotments up until the time they transferred their property to the Walkers in 1994. Walker Decl. ¶4 and 9; accompanying Exhibits B and G. These facts, along with the language of the Final Decree, create a reasonable inference, which must be viewed in the light most favorable to the Walkers, that the Dominguez and Oliver Orders only applied to water rights for irrigation purposes only, and did not adjudicate water rights associated with stock watering. See *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992). Because reasonable minds could differ on the inferences drawn from these facts, summary judgment must be denied. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Lake*

*Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 875 (9th Cir. 1987); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520-522 (1991).

### III.    The Walkers' Right-Of-Way To Access Their Water Rights And The Economic Viable Use Of Their Ranch Has Been Taken.

The United States asserts that the cancellation of the Walkers' grazing permit does not constitute a denial of the Walkers' access to their vested water rights.  Defendant's MSJ, p. 31.  The United States cite *Walker v. United States*, 162 P.3d 882, 886 (N.M. 2007) for the proposition that the Walkers do not have a forage right on federal lands implicit in their right-of-way for maintenance and enjoyment of their vested water rights.  *Id.*  According the United States, the Walkers still enjoy a right-of-way access to their water rights and that right-of-way has not been taken by the cancellation of the grazing permit.  Thus, in theory, the Walkers could still bring their cattle to their vested water rights for stock watering purposes, as long as the cattle did not graze along the way.  Otherwise, according to the United States, the Walkers could continue to use the water by moving it outside of the allotments.  The choices presented to the Walkers are logistically impossible and economically prohibitive, demonstrating that the actions of the United States has effectively resulted in the taking of the Walkers' ranch of all economic viable use.

The United States claim that, since the grazing permits issued to the Walkers are not compensable property interests, their revocation cannot impact the appurtenant base property that the Walkers own in fee.  That argument ignores the economic reality that exists for the Walkers, that without access to their water rights for their cattle, the ranch cannot be economically viable.  The Walkers are not claiming the permits give them any compensable rights.  Instead of relying on permits, the Walkers had reasonable-backed expectations when they acquired their base

property that access to their water rights would not be economically prohibitive.

When the Walkers' predecessors acquired the base property, they also acquired the corresponding right to access to their water rights for stock watering purposes.  Courts will rarely find occasion to deny the essential purpose of property use.  *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1031 (1992). The only economically viable use for this land is as a base property for cattle ranching.  See *Curtin v. Benson*, 222 U.S. 78, 86 (1911).  To deny the Walkers the right to use and access their water rights in a way that completely thwarts their reasonable-backed expectations is to also deny the essential use of the base property.

## CONCLUSION

For the foregoing reasons, the United States's motion for summary judgment should be denied.

Dated: October 18, 2007.

Respectfully submitted,

Lyman D. Bedford
McQuaid Bedford & Van Zandt, LLP
221 Main Street, 16th Floor
San Francisco, CA 94105
Tel: (415) 905-0200
Fax: (415) 905-0202
E-mail: lbedford@mbvz.com
Attorney of Record for Plaintiffs

OF COUNSEL:

Michael J. Van Zandt
McQuaid Bedford & Van Zandt, LLP
221 Main Street, 16th Floor
San Francisco, CA 94105
Tel: (415) 905-0200
Fax: (415) 905-0202
E-mail: mvanzandt@mbvz.com

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**     20