# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROY WALKER AND SHELLIE WALKER,   )  Case No.  04-155 L

        )

      Plaintiffs,       )  Judge Susan G. Braden

        )

vs.        )

        )

UNITED STATES OF AMERICA,    )

        )

      Defendant.      )

        )

_____  )

## PLAINTIFFS' RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to RCFC 56(h), Plaintiffs submit this response to Defendant's proposed findings of unconverted fact which are material to its motion for summary judgment.

1.    In 1994, Plaintiffs Roy Walker and Shellie Walker (together, "the Walkers") purchased approximately 40 acres in Grant County, New Mexico, from Crecencio (Chris) and Nellie Dominguez.  Compl. ¶¶8-9 (Doc. 1); Declaration of Shellie Walker ¶¶3-5 (July 19, 2004) (Doc. 18) (hereinafter "Walker Decl.").

**PLAINTIFFS' RESPONSE:** Plaintiffs agree with this proposed finding of fact as stated, except for the reference to Neline Dominguez as "Nellie" Dominguez.

2.      In 1994, the Walkers purchased an additional 160 acres in Grant County from Louis and Myrtle Oliver.  Compl. ¶¶7-8; Walker Decl. ¶¶7-9.

**PLAINTIFFS' RESPONSE:** Plaintiffs agree with this proposed finding of fact as stated, except to the citation to paragraph 7 of the Complaint as irrelevant.

3.      Plaintiffs allege that, at the time they purchased this property from the Dominguezes and the Olivers, they

> also acquired rights to water in New Mexico, which rights are appurtenant to [their] ranch.  Among the water rights acquired by plaintiffs are rights to waters originating in or found in the Cold and Hot Springs Allotments.  The water rights were lawfully acquired by plaintiffs' predecessors-in-interest or by plaintiffs. Plaintiffs have all rights to said water for all purposes.  Defendant has no legal or equitable right or interest in said water.

Compl. ¶ 10.

**PLAINTIFFS' RESPONSE:** Plaintiffs agree with this proposed finding of fact as stated.

4.      The Cold and Hot Springs Allotment is located within the exterior boundaries of the Gila National Forest in New Mexico.  Compl. ¶8; Declaration of Ralph Pope ¶2 and Ex. 1 (map) (Def. Ex.30).

**PLAINTIFFS' RESPONSE:** Plaintiffs agree with this proposed finding of fact as stated.

5.      The Walkers subsequently sold the 160 acres purchased from the Olivers in 1994, but retained the rights associated with the base property to use the Cold Springs Allotment under

a grazing permit issued by the Forest Service.  Walker Decl. ¶8; Pls.' Opp. To Def.'s Mot. To

Dismiss at 3-4 (dated July 20, 2004) (Doc. 17).

**PLAINTIFFS' RESPONSE:**  Plaintiffs disagree with this proposed finding of fact as

stated.  Plaintiffs object to Defendant's mis-characterization of the evidence.  Plaintiffs retained

the rights to the use of the Cold Springs Allotment, including (not under) the United States Forest

Service grazing permit.

6.      Prior to the Walkers' 1994 purchase of property from the Dominguezes and the

Olivers, including the alleged purchase of water rights, the Mimbres River Stream System and

the Mimbres Underground Water Basin were the subject of an adjudication in the New Mexico

state courts, title <u>Mimbres Valley Irrig. Co. v. Salopek, et al.</u>, No. 6326 (6th Judicial Dist., Luna

County, NM)("<u>Mimbres</u> adjudication").  <u>See</u> <u>Walker v. United States</u>, 162 P.3d 882, 885 n.2

(N.M. 2007).

**PLAINTIFFS' RESPONSE:**  Plaintiffs agree with this proposed finding of fact as

stated.

7.      The Walkers' predecessors-in-interest (Oliver and Dominguez) participated as

defendants in the <u>Mimbres</u> adjudication, and their rights to use the waters of the Mimbres system

were determined in this adjudication.  Def. Ex. 25 (Order, Case No. 6326, Sub-File No. 672,

Defendant Dominguez); Def. Ex. 26 (Order, Case No. 6326, Sub-File No. 761, Defendant

Oliver); Def. Ex. 29 (Final Decree in Case No. 6326).

**PLAINTIFFS' RESPONSE:**  Plaintiffs disagree with this proposed finding of fact as

stated.  The Mimbres adjudication determined the water rights of the Olivers and Dominguezes

for irrigation purposes only.  As stated in Final Decree, the claimants involved in the Mimbres

---

adjudication did not include those using underground water exclusively for domestic or stock

watering purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E.
> Reynolds, Sate Engineer, has served process on all known water claimants as can
> be discovered by reasonable diligence and who are claiming the right to divert or
> use the public waters of the Mimbres River Stream System or Mimbres
> Underground Water Basin, except for those using underground water exclusively
> for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

8. On November 5, 1974, the New Mexico state court issued an order in the

Mimbres adjudication addressing the rights of Dominguez to divert and use the waters of the

Mimbres River Stream System and Underground Water Basin. Def. Ex. 25 (Order, Case No.

6326, Sub-File No. 672, Defendant Dominguez). The state court determined that Dominguez

had a right to divert and use certain surface waters of the Mimbres River System to irrigate a

small parcel of land. Id. The order found that,

> The defendant [Dominguez] has no surface or underground water
> rights in the Rio Mimbres Stream System and/or the Mimbres
> Underground Water Basin, other than those referred to in this
> Order and those other Orders entered by this Court in this cause
> regarding other lands owned by the said defendant in the said
> stream system or basin.

Id. The order also permanently enjoined Dominguez "from any use of the public surface or

underground waters of the Rio Mimbres Stream System and/or the Rio Mimbres Underground

Water Basin, except in strict accordance with the water right described herein." Id.

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as

stated. The Mimbres adjudication determined the water rights of the Dominguezes for irrigation

purposes only. As stated in Final Decree, the claimants involved in the Mimbres adjudication

did not include those using underground water exclusively for domestic or stock watering

purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E.
> Reynolds, Sate Engineer, has served process on all known water claimants as can
> be discovered by reasonable diligence and who are claiming the right to divert or
> use the public waters of the Mimbres River Stream System or Mimbres
> Underground Water Basin, except for those using underground water exclusively
> for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

Plaintiffs also object to Defendant mis-quoting the court's order.

9.      Neither the water source nor the land to be irrigated that are identified in the

Mimbres adjudication order addressing the rights of Dominguez to divert and use water are

located within the Cold and Hot Springs Allotment. Compare Def. Ex. 25 (Order with

description of land and water source) with Pope Decl., Ex. 1 (map showing location of Cold and

Hot Springs Allotment)(Def. Ex. 30).

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as

stated to the extent that the water rights referred therein applies only to irrigation, and not to

domestic or stock watering purposes.

10.      On August 24, 1987, the New Mexico state court issued an order in the Mimbres

adjudication addressing the water rights of defendant Louis Oliver. Def. Ex. 26 (Order, Case No.

6326, Sub-File No. 761, Defendant Oliver). The state court determined that Oliver had a right to

divert and use a specified quantity of water from the Mimbres Underground Water Basin to

irrigate approximately 3.3 acres of land identified in the order. Id. The state court's order also

states that Oliver has "no surface or underground water rights in the Rio Mimbres Steam System

and/or the Mimbres Underground Water Basin," other than those referred to in the orders issued

by the state court in the adjudication.  Id.  The order also permanently enjoins Oliver "from any

use of the public surface or underground waters of the Rio Mimbres Stream System and/or the

Rio Mimbres Underground Water Basis, except in strict accordance with the water right

described herein."  Id.

      **PLAINTIFFS' RESPONSE:**  Plaintiffs disagree with this proposed finding of fact as

stated.  The Mimbres adjudication determined the water rights of the Dominguezes for irrigation

purposes only.  As stated in Final Decree, the claimants involved in the Mimbres adjudication

did not include those using underground water exclusively for domestic or stock watering

purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E.
> Reynolds, Sate Engineer, has served process on all known water claimants as can
> be discovered by reasonable diligence and who are claiming the right to divert or
> use the public waters of the Mimbres River Stream System or Mimbres
> Underground Water Basin, except for those using underground water exclusively
> for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

      Plaintiffs also object to Defendant mis-quoting the court's order.

      11.    Neither the water source nor the land to be irrigated that are identified in the

Mimbres adjudication order addressing the rights of Oliver to divert and use water are located

within the Cold and Hot Springs Allotment.  Compare Def. Ex. 26 (Order with description of

land and water source) with Pope Decl., Ex. 1 (map showing location of Cold and Hot Springs

Allotment) (Def. Ex. 30).

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated to the extent that the water rights referred therein applies only to irrigation, and not to domestic or stock watering purposes.

12.     The <u>Mimbres</u> adjudication also encompassed the water rights held by the United States within the Rio Mimbres Stream System and the Mimbres Underground Water Basin.  The water rights of the United States are identified in an Amended Stipulation that was filed with the state court on August 31, 1990.  Def. Ex. 27 (Amended Stip. on the United States' Water Rights Claims in Case No. 6326, Subfile No. 914, Defendant United States).  This Amended Stipulation was approved and accepted by the state court.  Def. Ex. 28 (Order approving Amended Stipulation).

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated to the extent that the United States is claiming that all of the water rights associated with those identified in the Amended Stipulation on the United States' Water Right Claims (Def. Ex. 27) were exclusively awarded to the United States.  As provided in the Amended Stipulation, the United States was awarded only a limited amount of water from the Mimbres River steam system as to each water source for use with livestock and wildlife.  The United States has not produced any evidence that the limited amount of water awarded to it constitutes the entire amount available, or that the water rights are exclusive to any other claimant.

The Mimbres adjudication determined the water rights of the Walkers' predecessors, the Dominguezes and Olivers, for irrigation purposes only.  As stated in Final Decree, the claimants involved in the Mimbres adjudication did not include those using underground water exclusively for domestic or stock watering purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E.
> Reynolds, Sate Engineer, has served process on all known water claimants as can
> be discovered by reasonable diligence and who are claiming the right to divert or
> use the public waters of the Mimbres River Stream System or Mimbres
> Underground Water Basin, except for those using underground water exclusively
> for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

13.     The Amended Stipulation filed with and approved by the state court identifies 263

water rights acquired by the United States under New Mexico state law, including rights to

waters of the Mimbres River stream system and underground basin that are located on the subject

allotment.  Def. Ex. 27; Def. Ex. 28.

**PLAINTIFFS' RESPONSE:**  Plaintiffs disagree with this proposed finding of fact as

stated to the extent that the United States is claiming that all of the water rights associated with

those identified in the Amended Stipulation on the United States' Water Right Claims (Def. Ex.

27) were exclusively awarded to the United States.  As provided in the Amended Stipulation, the

United States was awarded only a limited amount of water from the Mimbres River steam system

as to each water source for use with livestock and wildlife.  The United States has not produced

any evidence that the limited amount of water awarded to it constitutes the entire amount

available, or that the water rights are exclusive to any other claimant.

The Mimbres adjudication determined the water rights of the Walkers' predecessors, the

Dominguezes and Olivers, for irrigation purposes only.  As stated in Final Decree, the claimants

involved in the Mimbres adjudication did not include those using underground water exclusively

for domestic or stock watering purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E.
> Reynolds, Sate Engineer, has served process on all known water claimants as can

be discovered by reasonable diligence and who are claiming the right to divert or use the public waters of the Mimbres River Stream System or Mimbres Underground Water Basin, except for those using underground water exclusively for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

14.     A final decree was entered in the <u>Mimbres</u> adjudication on January 14, 1993.  Def.

Ex. 29.  <u>See also</u> <u>Walker v. United States</u>, 162 P.3d at 885 n.2 (referencing this final decree).

**PLAINTIFFS' RESPONSE:**  Plaintiffs disagree with this proposed finding of fact as

stated to the extent that the Mimbres adjudication determined the water rights of the Walkers'

predecessors, the Dominguezes and Olivers, for irrigation purposes only.  As stated in Final

Decree, the claimants involved in the Mimbres adjudication did not include those using

underground water exclusively for domestic or stock watering purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E. Reynolds, Sate Engineer, has served process on all known water claimants as can be discovered by reasonable diligence and who are claiming the right to divert or use the public waters of the Mimbres River Stream System or Mimbres Underground Water Basin, except for those using underground water exclusively for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3. .

15.     The final decree entered in the <u>Mimbres</u> adjudication approves and confirms all of

the "orders adjudicating the water rights of each and every defendant in this case as against the

State of New Mexico[,]" Def. Ex. 29 at 3, including the orders adjudicating the water rights of

Dominguez, Oliver, and the United States (Def. 25-28).  The final decree also provides that

"[c]laims to the right to divert or use the public waters of the Mimbres River Stream System and

Mimbres Underground Water Basin not heretofore filed with the Court, shall not be adjudicated

by the Court except as may be necessary for the correction of mistakes or omissions."  Def. Ex.

29.  In addition, the final decree enjoins all defendants, as well as their successors, from any

diversion or use of such waters "except in accordance with the adjudication orders and this decree." Id.

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated to the extent that the water rights of the Dominguezes and Olivers referred therein applies only to irrigation, and not to domestic or stock watering purposes.

As stated in Final Decree, the claimants involved in the Mimbres adjudication did not include those using underground water exclusively for domestic or stock watering purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E. Reynolds, Sate Engineer, has served process on all known water claimants as can be discovered by reasonable diligence and who are claiming the right to divert or use the public waters of the Mimbres River Stream System or Mimbres Underground Water Basin, except for those using underground water exclusively for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

16.     In the Mimbres adjudication, the water rights within the Rio Mimbres basin on the Gila National Forest that had been developed for stock watering purposes were awarded to the United States.  Def. Ex. 27-29.

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated.  The United States was not awarded exclusive water rights for stock watering purposes. As stated in Final Decree, the claimants involved in the Mimbres adjudication did not include those using underground water exclusively for domestic or stock watering purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E. Reynolds, Sate Engineer, has served process on all known water claimants as can be discovered by reasonable diligence and who are claiming the right to divert or use the public waters of the Mimbres River Stream System or Mimbres Underground Water Basin, except for those using underground water exclusively for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

Plaintiffs also object that the statement as overbroad, lacking in foundation and that the exhibits cited do not support the finding.  The exhibits only show the water rights that were awarded to the United States.  No evidence is presented that those rights encompass all the water rights in the Gila National Forest or that they are exclusive to the United States.  As provided in the declarations of Ralph D. Pope and Shellie Walker, there exists 11 springs 2 tanks and 1 well are not identified in the Amended Stipulation.  Pope Decl. ¶18–26, Declaration of Shellie Walker in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Walker MSJ Decl.") ¶9.

17.     Plaintiffs' predecessors-in-interest - Oliver and Dominguez - were awarded water rights appurtenant to certain privately owned land outside of the Gila National Forest in the Mimbres adjudication, but they were not awarded any water rights on the Cold and Hot Springs Allotment.  Def. Ex. 25-29.

**PLAINTIFFS' RESPONSE:**  Plaintiffs disagree with this proposed finding of fact as stated.  The Mimbres adjudication determined the water rights of the Dominguezes and Olivers for irrigation purposes only.  As stated in Final Decree, the claimants involved in the Mimbres adjudication did not include those using underground water exclusively for domestic or stock watering purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E. Reynolds, Sate Engineer, has served process on all known water claimants as can be discovered by reasonable diligence and who are claiming the right to divert or use the public waters of the Mimbres River Stream System or Mimbres Underground Water Basin, except for those using underground water exclusively for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

18.     Plaintiffs allege that they own the water rights associated with certain stock water tanks on the Allotment.  Complaint (Doc. 1); Walker Decl. (Doc. 18); Pls.' Opp. to Def.'s Mot. To Dismiss at 3-5 (filed July 20, 2004) (Doc. 17).  Of the twelve stock tanks claimed by the Walkers in this case, ten of those tanks were identified in the <u>Mimbres</u> adjudication and the water rights associated therewith were awarded to the United States.  Pope Decl. ¶17 (Def. Ex. 30).

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact to the extent that the United States is claiming that all of the water rights associated with the ten tanks were exclusively awarded to the United States.  As provided in the Amended Stipulation on the United States' Water Right Claims (Def. Ex. 27), the United States was awarded only a limited amount of water from the Mimbres River steam system as to each of the ten tanks for use with livestock and wildlife.  The United States has not produced any evidence that the limited amount of water awarded to it constitutes the entire amount available, or that the water rights are exclusive to any other claimant.

19.     Plaintiffs allege that they possess vested water rights under New Mexico law to two stock water tanks that were not identified in the <u>Mimbres</u> adjudication.  The first of these two remaining tanks is the "Twin Calf Tank," which was developed on the allotment in 1991, during the <u>Mimbres</u> adjudication.  Pope Decl. ¶18 and Spreadsheet Attachment 1.  This tank was identified as an existing range improvement in 1995 when the Forest Service issued a term grazing permit to the Walkers for the Allotment.  Def. Ex. 1, p. 8.  The Walkers were assigned maintenance responsibility for this and other existing range improvements in their term grazing permit.  <u>Id.</u> at 8-11.  The Walkers' term grazing permit did not transfer ownership of these improvements or any water rights associated therewith to the Walkers.  <u>See</u> 36 C.F.R. §222.3(b)

("Grazing permits and livestock use permits convey no right, title, or interest held by the United

States in any land or resources.").

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as

stated.  According to the Walkers' declaration of ownership, the Twin Calf Tank was constructed

under the supervision of Louis Oliver and completed in 1978.  Exhibit A to the Walker MSJ

Decl.

Plaintiffs object to the assertion that the Twin Calf Tank was developed in 1991 as

lacking in foundation.  The United States cite the declaration of Ralph D. Pope, paragraph 18 for

this assertion.  That section of the Pope declaration states:

> From the comparison displayed in Spreadsheet Attachment 1, STOCK TANK CLAIMED
> BY WALKERS, I was also able to determine that Twin Calf Tank was listed in both the
> Walker documents and Forest Service record as shown below, but was not found in the
> Amended Stipulation, due to being constructed in 1991, during the adjudication of the
> Mimbres Watershed.

Mr. Pope has not provided any basis for his assertion that the Twin Calf Tank was

developed in 1991, nor has the United States has not provided any additional evidence of such a

development.

As to ownership of the Twin Calf Tank, on January 15, 2007, Plaintiffs filed with the

New Mexico State Engineer's Office their Declaration of Ownership of Livestock Water Dam or

Tank as to the Twin Calf Tank.  Walker MSJ Decl. ¶12.

20.    The second "tank" identified by the Walkers that was not identified in the

Mimbres adjudication appears to be a sediment retention structure built below the Royal John

mine, and thus is not a water source developed for stock watering purposes.  Pope Decl. ¶19 and

Spreadsheet Attachment 1.

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated. Plaintiffs and their predecessors made beneficial use of the water from the Royal John Tank for stock watering purposes. Walker MSJ Decl., ¶12. According the declaration of Ralph D. Pope, paragraph 19, as cited by Defendant, Mr. Pope states:

> From the comparison displayed in Spreadsheet Attachment 1, STOCK TANK CLAIMED BY WALKERS, I was able to determine that Royal John Tank was listed in the Walker documents, but not in the Forest Service record as shown below. I suspect this dam is a sediment retention structure constructed [sic] built below the Royal John mine.

Plaintiffs object to this statement and the evidence cited as speculation and lacking foundation. Mr. Pope only suspects that the Royal John Tank is a sediment retention structure. He has not provided any basis for his suspicion. The United States construes this suspicion for fact.

21.    Plaintiffs allege that they own the water rights associated with five wells that are located on the Allotment and that were identified in the <u>Mimbres</u> adjudication. Walker Decl. (Doc. 18); Pope Decl. ¶20. The water rights associated with these five wells were awarded to the United States in the <u>Mimbres</u> adjudication. Pope Decl. ¶20 and Spreadsheet Attachment 2.

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated. The Mimbres adjudication determined the water rights of the Walkers' predecessors, the Dominguezes and Olivers, for irrigation purposes only. As stated in Final Decree, the claimants involved in the Mimbres adjudication did not include those using underground water exclusively for domestic or stock watering purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E. Reynolds, Sate Engineer, has served process on all known water claimants as can be discovered by reasonable diligence and who are claiming the right to divert or use the public waters of the Mimbres River Stream System or Mimbres Underground Water Basin, except for those using underground water exclusively for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

Plaintiffs also disagree with this proposed finding of fact to the extent that the United States is claiming that all of the water rights associated with the five wells were exclusively awarded to the United States. As provided in the Amended Stipulation on the United States' Water Right Claims (Def. Ex. 27), the United States was awarded only a limited amount of water from the Mimbres River steam system as to each of the five wells for use with livestock and wildlife. The United States has not produced any evidence that the limited amount of water awarded to it constitutes the entire amount available, or that the water rights are exclusive to any other claimant.

22.     Plaintiffs allege that they possess a vested water right in connection with one well on the Cold and Hot Springs Allotment, identified as "Test Well," that was not identified in the Mimbres adjudication. This so-called "Test Well" "appears to be a mineral exploration core drill hole that has never been developed into a producing water well." Pope Decl. ¶21.

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated. Plaintiffs and their predecessors made beneficial use of the water pumped from the Test Well for stock watering purposes. Walker MSJ Decl. ¶13. According the declaration of Ralph D. Pope, paragraph 21, as cited by Defendant, Mr. Pope states:

> From the comparison displayed in Spreadsheet Attachment 2, WELLS CLAIMED BY WALKERS, I was able to determine that Test Well was listed in the Walker documents, but not in the Forest Service record or in the Amended Stipulation, as shown below. This well appears to be a mineral exploration core drill hole that has never been developed into a producing water well.

Plaintiffs object to this statement and the evidence cited as speculation and lacking foundation. Mr. Pope only speculates that the Test Well has never been developed into a water

producing well.  He has not provided any basis for his suspicion.  The United States has not

produce any other evidence for their assertion that this well never produced water.

The Mimbres adjudication determined the water rights of the Dominguezes and Olivers

for irrigation purposes only.  As stated in Final Decree, the claimants involved in the Mimbres

adjudication did not include those using underground water exclusively for domestic or stock

watering purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E.
> Reynolds, Sate Engineer, has served process on all known water claimants as can
> be discovered by reasonable diligence and who are claiming the right to divert or
> use the public waters of the Mimbres River Stream System or Mimbres
> Underground Water Basin, except for those using underground water exclusively
> for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

23.    The Walkers have not alleged or offered any proof that they or their predecessors

were authorized to construct the "Test Well" on the Cold and Hot Springs Allotment and this

authorization from the Forest Service provided that title to this range improvement would be

vested in them instead of the United States.  See 36 C.F.R. §222.9 (Forest Service regulations

governing range improvements).  The Walkers have not alleged or offered any proof that they

filed a complete application with the New Mexico State Engineer's Office pursuant to New

Mexico law and received a water rights permit or other determination by the state with respect to

the "Test Well."  See NMSA 1978, §72-1-2; §72-12-1; §§72-1-12.1-12.3.

**PLAINTIFFS' RESPONSE:**  Plaintiffs disagree with this proposed finding of fact as

stated.  The United States has both the initial burden or production and ultimate burden of

persuasion for this motion for summary judgment.  See *Nissan Fire & Marines Ins. Co., Ltd. v.

Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  With the above statement, the United

States attempts to reverse these burdens.  The United States has the initial burden to provide

evidence to support their assertion that Plaintiffs were not authorized to construct the Test Well

or that they never received a "permit or other determination" by the state.  No such evidence has

been provided.  The burden is not on Plaintiffs to disprove these assertions.

With that said, on January 15, 2007, Plaintiffs filed with the New Mexico State

Engineer's Office their Declaration of Owner of Underground Water Right as to the Test Well.

Walker MSJ Decl. ¶13; *See* NMSA 1978 §72-12-4, §72-12-5, and §72-12-6.

Plaintiffs also object the United States' mis-citation to §§72-1-12.1-12.3.

24.     Plaintiffs allege that they own the water rights associated with ten springs that

have been identified on the Allotment and that were also identified in the Mimbres adjudication.

Walker Decl. (Doc. 18); Pope Decl. ¶22.  The water rights associated with these ten springs were

awarded to the United States in the adjudication.  Pope Decl. ¶22.

**PLAINTIFFS' RESPONSE:**  Plaintiffs disagree with this proposed finding of fact as

stated.  Plaintiffs own the water rights associated with eleven springs that have been identified on

the Allotment and that were also identified in the Mimbres adjudication.  *See* Pope Decl. ¶¶22,

24.

The Mimbres adjudication determined the water rights of the Walkers' predecessors, the

Dominguezes and Olivers, for irrigation purposes only.  As stated in Final Decree, the claimants

involved in the Mimbres adjudication did not include those using underground water exclusively

for domestic or stock watering purposes:

> The plaintiff-in-intervention, State of New Mexico on the relation of S.E.
> Reynolds, Sate Engineer, has served process on all known water claimants as can
> be discovered by reasonable diligence and who are claiming the right to divert or
> use the public waters of the Mimbres River Stream System or Mimbres

> Underground Water Basin, except for those using underground water exclusively for domestic or stock watering purposes.

Def. Ex. 29 (Final Decree in Case No. 6326), ¶3.

Plaintiffs also disagree with this proposed finding of fact to the extent that the United States is claiming that all of the water rights associated with the ten springs were exclusively awarded to the United States. As provided in the Amended Stipulation on the United States' Water Right Claims (Def. Ex. 27), the United States was awarded only a limited amount of water from the Mimbres River steam system as to each of the ten springs for use with livestock and wildlife. The United States has not produced any evidence that the limited amount of water awarded to it constitutes the entire amount available, or that the water rights are exclusive to any other claimant.

25.     Plaintiffs allege that they are the owners of vested water rights associated with three additional springs that were not identified in the Mimbres adjudication. Pope Decl. ¶23. Of these three additional springs, two were developed on the Allotment during the Mimbres adjudication and the third spring is located in the Rio Grande watershed, which is the subject of a separate general stream adjudication under New Mexico law. Id. All three of these springs were identified in the Walkers' term grazing permit as an existing range improvements. Def. Ex. 1, pp. 9-11.

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated. Plaintiffs are the owners of water rights associated with eleven (not three) additional springs that were not identified in the Mimbres adjudication. Walker MSJ Decl. ¶9; *See* Pope Decl. ¶23, 25.

Plaintiffs also object to the characterization that two of the springs were "developed" during the Mimbres Adjudication. This statement is incomprehensible and lacks foundation. Technically, springs are naturally existing and cannot be "developed" such as wells. According the declaration of Ralph D. Pope, paragraph 23, as cited by Defendant, Mr. Pope states:

> From the comparison displayed in Spreadsheet Attachment 3, SPRINGS CLAIMED BY WALKERS, I was able to determine that the following springs were listed on both the Walker documents and the Forest Service record as shown below, but were not found in the Amended Stipulation. Dead Man Spring and Maverick Spring were developed in 1986 and 1987 respectively, during the adjudication of the Mimbres Watershed. Rustler Spring is located in the Rio Grande Watershed which makes it not subject to adjudication of the Mimbres Watershed waters.

Plaintiffs also object to this statement and the evidence cited as speculation and lacking foundation. Mr. Pope provides no basis or evidence for his statement that "Dead Man Spring and Maverick Spring were developed in 1986 and 1987 respectively." The United States has not produce any other evidence for this assertion. As to the Rustler Spring being located in the Rio Grande Watershed, Plaintiffs have no information to either agree or dispute this assertion.

26.     The Walkers were assigned maintenance responsibility for the three springs in Proposed Fact #25 and other existing range improvements in their term grazing permits. Def. Ex. 1, pp. 8-11. The grazing permit did not transfer ownership of these improvements or any water rights associated therewith to the Walkers. Def. Ex. 1; 36 C.F.R. §222.3(b).

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated. Plaintiffs are the owners of water rights associated with eleven (not three) additional springs that were not identified in the Mimbres adjudication. Walker MSJ Decl. ¶9; *See* Pope Decl. ¶23, 25. According the affidavits of the Walkers' predecessors, Louis Oliver and Chris Dominguez, they used or possessed the water rights to these eleven springs continuously from 1971 to 1994, when they transferred the water rights to the Walkers. On January 15, 1997,

Plaintiffs filed with the New Mexico State Engineer's Office their Declaration of Ownership of Water Right to these eleven springs. Walker MSJ Decl. ¶¶11, 14.

27.    Neither the Walkers nor their predecessors applied for and received a water right permit from the State of New Mexico under state law for the springs identified in Proposed Fact #25.

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated. Plaintiffs are the owners of water rights associated with eleven (not three) additional springs that were not identified in the Mimbres adjudication. Walker MSJ Decl. ¶9; *See* Pope Decl. ¶23, 25. Plaintiffs were not required to apply for water right permits from the State of New Mexico for these eleven springs, because the Plaintiffs have vested rights to these springs. On January 15, 1997, Plaintiffs filed with the New Mexico State Engineer's Office their Declaration of Ownership of Water Right to these eleven springs. Walker MSJ Decl. ¶11.

28.    [Mis-numbered as #22] Plaintiffs also assert that they own vested water rights under New Mexico law in connection with other springs that were not identified in the Mimbres adjudication. See Pope Decl. ¶24-25. These additional springs are instead intermittent water sources that are only present following recent precipitation events. Id.

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated. Plaintiffs are the owners of water rights associated with eleven springs that were not identified in the Mimbres adjudication. Walker MSJ Decl. ¶9; *See* Pope Decl. ¶23, 25. Plaintiffs and their predecessors made beneficial use of the water from these eleven springs for stock watering purposes. Walker MSJ Decl. ¶11, 14. According the declaration of Ralph D. Pope, ¶25., as cited by Defendant, Mr. Pope states:

From the comparison displayed in Spreadsheet Attachment 3, SPRINGS CLAIMED BY WALKERS, I was able to determine that the following springs were listed in the Walker documents, but not in the Forest Service Record. All of these springs except for Turkey Spring and Yellow Jacket Seep are not developed and are intermittent water sources only present following recent precipitation events. . . .

Plaintiffs object to this statement and the evidence cited as speculation and lacking foundation. Mr. Pope has not provided any basis for his assertion that some of the springs are "intermittent water sources." The United States has not produce any other evidence for this assertion.

Plaintiffs also object to Pope's characterization that only two of the springs were "developed." This statement is incomprehensible. Technically, springs are naturally existing and cannot be "developed" such as wells.

29.     [Mis-numbered as #23] Since the final decree was issued in the <u>Mimbres</u> adjudication, the Walkers have not obtained any water rights permits from the New Mexico State Engineer for waters on the Hot and Cold Springs Allotment.

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as stated. Plaintiffs are the owners of water rights associated with their purchased from property from their predecessors, the Dominguezes and the Olivers. Walker Decl. ¶3. Plaintiffs were not required to obtain water right permits from the State of New Mexico for their vested water rights on the Hot and Cold Springs Allotment. On January 15, 1997, Plaintiffs filed with the New Mexico State Engineer's Office their declarations of ownership to the 40 water rights they obtained from their predecessors. Walker MSJ Decl. ¶5.

30.     [Mis-numbered as #24] Plaintiffs have not sought permission to move any water that they allegedly have rights to under New Mexico state law off the Allotment because those alleged water rights,

consist of small sources throughout the grazing allotment and with
no distribution system, other than grazing cattle.  It would be a
logistical nightmare as well as economically prohibitive for a
ranching family to move the water off the grazing allotment.

Plaintiff-Appellants' Reply Brief at 8, N.M.S. Ct. Case No. 29,544 (dated August 30, 2006) (Def.

Ex. 32).

**PLAINTIFFS' RESPONSE:** Plaintiffs disagree with this proposed finding of fact as

stated.  Plaintiffs have not sought permission to move any water because of this pending

litigation.  Plaintiffs have a vested right to the waters on the allotment and until those rights are

determined by this Court, Plaintiffs have no reason to try to relocate any water off of the

allotment.

Respectfully submitted this 18th day of October, 2007.

By: _____
Lyman D. Bedford
Attorney of Record for Plaintiffs
ROY WALKER AND SHELLIE WALKER

McQUAID BEDFORD & VAN ZANDT  LLP
221 Main Street, 16th Floor
San Francisco, CA 94105
Tel:    415/905-0200
Fax:    415/905-0202
Email: lbedford@mbvz.com

OF COUNSEL:

Michael J. Van Zandt
McQUAID BEDFORD & VAN ZANDT LLP
221 Main Street, 16th Floor
San Francisco, CA 94105
Tel:    415/905-0200
Fax:    415/905-0202
Email: mvanzandt@mbvz.com