IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROY WALKER AND SHELLIE WALKER, | ) | |
| Plaintiffs, | ) | No. 04-155 L |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Susan G. Braden |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301
Telephone No.: (603) 230-2583
Facsimile No.: (603) 225-1577
E-mail: kristine.tardiff@usdoj.gov

OF COUNSEL:

MARY ANN JOCA
Assistant Regional Attorney
Office of the General Counsel
United States Dept. of Agriculture
P.O. Box 586
Albuquerque, N.M. 87103-0586

Dated: November 28, 2007

# TABLE OF CONTENTS


I. Plaintiffs Have Failed to Establish That They Own Forage Rights Under New Mexico State Law. . . . . . . . 2

II. Plaintiffs Have Failed To Establish That They Hold Vested Water Rights on the Allotments That Are Recognized Under State Law. . . . . . . . 2

A. The Walkers' Predecessors Were Not Awarded Any Water Rights on the Allotments in the *Mimbres* Adjudication . . . . . . . . 3

B. The Final Decree Issued in the *Mimbres* Adjudication Is Binding on Plaintiffs And Cannot Be Collaterally Attacked in this Action. . . . . . . . 5

C. Plaintiffs Cannot Overcome the Adverse Outcome in the *Mimbres* Adjudication By Filing "Declarations" of Ownership. . . . . . . . 11

D. Plaintiffs' Interpretation of the *Mimbres* Adjudication is Legally Incorrect. . . . . 13

III. Plaintiffs Have Not Established Ownership of the Two Water Rights That Fall Outside the Scope of the *Mimbres* Adjudication. . . . . . . . 14

IV. Plaintiffs Have Failed to Establish A Taking of Any Water Rights, Any Access Rights or Their Ranch. . . . . . . . 16

V. CONCLUSION. . . . . . . . 19

## TABLE OF AUTHORITIES

### FEDERAL CASES

Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). . . . . . . . . . . . 18

Dodge v. Cotter Corp.,
203 F.3d 1190 (10th Cir. 2000). . . . . . . . . . . . 7

Fala Corp. v. United States,
53 Fed. Cl. 86 (2002), appeal dismissed, 66 Fed. Appx. 193 (Fed. Cir. 2003). . . . . . . . . . 6

Graybill v. U.S. Postal Service,
782 F.2d 1567 (Fed. Cir. 1986). . . . . . . . . . . . 6

Kremer v. Chemical Construction Corp.,
456 U.S. 461 (1982).. . . . . . . . . . . . 6

Marrese v. American Academy of Orthopaedic Surgeons,
470 U.S. 373 (1985).. . . . . . . . . . . . 6

MGA, Inc. v. General Motors Corp.,
827 F.2d 729 (Fed. Cir.1987).. . . . . . . . . . . . 6, 10

Centro Medico de Turabo, Inc. v. Feliciano de Melecio,
406 F.3d 1 (1st Cir. 2005). . . . . . . . . . . . 17

Migra v. Warren City Dist. Bd. of Ed.,
465 U.S. 75 (1984).. . . . . . . . . . . . 6

United States v. New Mexico,
438 U.S. 696 (1978).. . . . . . . . . . . . 3

### STATE CASES

El Paso & Rock Island Ry. v. Dist. Ct. of Fifth Judicial Dist. for Chaves County,
8 P.2d 1064 (N.M. 1931). . . . . . . . . . . . 11

Elephant Butte Irrigation Dist. v. Regents of N.M. State Univ.,
849 P.2d 372 (N.M. Ct. App. 1993).. . . . . . . . . . . . 3

Mimbres Valley Irrig. Co. v. Salopek,
564 P.2d 615 (N.M. 1977). . . . . . . . . . . . 3

Rosette, Inc. v. Dept. of the Interior,
169 P.3d 704, 716 (N.M. Ct. App. 2007), cert. denied (March 19, 2007). . . . . . . . . . . . 6, 7

State ex rel. Reynolds v. Pecos Valley Artesian Conservancy Dist.,
663 P.2d 358, 359 (N.M. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Pioneer Irrigation Dist.,
157 P.3d 600 (Idaho 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Walker v. United States,
162 P.3d 882 (N.M. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 16, 17

**FEDERAL STATUTES**

28 U.S.C. § 1738. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATE STATUTES**

NMSA 1978 § 72-4-17. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

NMSA § 72-12-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

NMSA § 72-12-1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

NMSA § 72-12-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

NMSA § 72-12-5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**STATE REGULATIONS (New Mexico Administrative Code)**

NMAC Art. 7, Declared Underground Water Basins. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19.26.2.7.DD NMAC.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

19.26.2.8 NMAC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

19.26.2.8 D. NMAC.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

19.27.43.8 NMAC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

19.27.1.8-9 NMAC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The only claims that remain in this Fifth Amendment takings case are Plaintiffs' claims that their forage rights, water rights, access rights and their ranch have been taken. Defendant has moved for summary judgment as to all of these remaining takings claims. Plaintiffs' opposition to this motion is premised on the assertion that there are facts in dispute that preclude summary judgment. Contrary to that assertion, Plaintiffs have not established that any material facts are in dispute. Instead, the only disputed issues before the Court are legal issues that are properly resolved at summary judgment.

As is now evident from Plaintiffs' opposition brief, the crux of Plaintiffs' remaining claims is the loss of their ability to graze livestock on the Hot and Cold Springs Allotments ("Allotments") in the Gila National Forest and, through that grazing, to access and make use of water located on the Allotments. However, Plaintiffs have failed to establish that they possess forage rights or water rights on the Allotments. Moreover, Plaintiffs do not possess a property right under federal or state law that allows them to graze livestock on the Allotments. Indeed, the New Mexico Supreme Court expressly rejected Plaintiffs' contrary contention in this case that their ownership of any state law-based water rights, or rights-of-way to access water rights on lands that they do not own, encompasses a right to move their cattle to the water and allow them to graze along the way. Accordingly, even if the Court assumes that Plaintiffs possess water rights on the Allotments, because they do not possess a right to exercise any such water rights through the grazing of livestock on lands that they do not own, the loss of that alleged "right" to graze and any incidental impact that loss has on Plaintiffs' alleged water rights (if any), access rights (if any), and their ranch, does not constitute a taking. Summary judgment should therefore

be granted in favor of the United States on Plaintiffs' remaining takings claims.

## I. Plaintiffs Have Failed to Establish That They Own Forage Rights Under New Mexico State Law

Defendant has moved for summary judgment as to Plaintiffs' claim that their "forage rights" have been taken on the ground that the New Mexico Supreme Court held that Plaintiffs do not possess any such right as an incident to any water rights owned by the Plaintiffs. Def.'s Mem. at 12-16 (Doc. 44). Although Plaintiffs continue to state that they own "forage rights," Pls.' Opp. at 1-2, they otherwise fail to address Defendant's argument in their opposition brief. Plaintiffs' bare allegation that they own forage rights is unsupported by reference to any specific facts as required by RCFC 56(e), and is also contrary to the ruling of the New Mexico Supreme Court in Walker v. United States, 162 P.3d 882 (N.M. 2007) ("Walker IV"). Accordingly Plaintiffs have not met their burden of establishing that they own "forage rights" under New Mexico law, and summary judgment should be entered in Defendant's favor as to Plaintiffs' claim that such rights have been taken.

## II. Plaintiffs Have Failed To Establish That They Hold Vested Water Rights on the Allotments That Are Recognized Under State Law

Plaintiffs assert that they are the owners of 40 water rights, which allegedly consist of the right to access and use 22 springs, 12 tanks, and 6 wells, all of which are located on the Cold and Hot Springs Allotments in the Gila National Forest in New Mexico. Pls.' Opp. at 4. Plaintiffs assert that these water rights were "lawfully acquired" by their predecessors-in-interest, Crecencio and Neline Dominguez ("Dominguez") and Louis and Myrtle Oliver ("Oliver"), and that they purchased these water rights from their predecessors in 1994. Compl. ¶¶ 7–10; Declaration of Shellie Walker ¶¶ 3-5, 7-9 (July 19, 2004) (Doc. 18) (hereinafter "Walker Decl.").

Plaintiffs' assertions are contradicted by the undisputed facts of this case, and contrary to applicable New Mexico state law.

A. The Walkers' Predecessors Were Not Awarded Any Water Rights on the Allotments in the *Mimbres* Adjudication

Of the 40 water rights that the Walkers claim to have acquired from Dominguez and Oliver in 1994, 39 of those water rights are located within the Mimbres River Stream System and the Mimbres Underground Water Basin (collectively referred to herein as the "Mimbres system"), both of which were the subject of a general stream adjudication under New Mexico law. Mimbres Valley Irrig. Co. v. Salopek, et al., No. 6326 (6th Judicial Dist., Luna County, NM) ("Mimbres adjudication").[1] The purpose of this adjudication was "to determine the exact rights of each user to water from the Rio Mimbres." United States v. New Mexico, 438 U.S. 696, 698 (1978). In order to avoid piecemeal litigation of water rights within a stream system or basin, once an adjudication is initiated state law requires anyone claiming such a right to divert or use public waters within the stream system or underground basin to be joined in the adjudication. NMSA 1978 § 72-4-17; Elephant Butte Irrigation Dist. v. Regents of N.M. State Univ., 849 P.2d 372, 376-77 (N.M. Ct. App. 1993).

Here, "all parties claiming any interest in and use of the waters of the Rio Mimbres" were named as defendants in the Mimbres adjudication. Mimbres Valley Irrig. Co. v. Salopek, 564 P.2d 615, 615 (N.M. 1977). The adjudication of such claims and the award of water rights was accomplished through the issuance of individual orders specific to each claimant and a final decree stating that the adjudication expressly encompassed all claims to "the right to divert or use

[1]The one exception is a single water right allegedly owned by the Walkers on the allotment that is located in the Rio Grande water system. This water right is addressed in Defendant's opening memorandum at 29–30 (Doc. 44), and *infra* in Section III.

the public waters of the Mimbres River Stream System or Mimbres Underground Water Basin, except for those using underground water exclusively for domestic or stock water purposes." Mimbres adjudication, Final Decree at 1-2 (Def. Ex. 29).

The Walkers' predecessors-in-interest were defendants in the Mimbres adjudication and were required to assert all of their claims to use or divert waters from the Mimbres system, except for the right to use underground water exclusively for domestic or stock water purposes. As set forth in Defendant's opening memorandum, Dominguez and Oliver were only awarded the right to use a specified quantity of surface water to irrigate certain lands that they owned outside of the Allotments. See Def.'s Summ. Judg. Mem. at 8–11 (Doc. 44); Def. Ex. 25 (Order, Case No. 6326, Sub-File No. 672, Defendant Dominguez); Def. Ex. 26 (Order, Case No. 6326, Sub-File No. 761, Defendant Oliver). In awarding these limited water rights to Dominguez and Oliver, the state court further found that Dominguez and Oliver had "no surface or underground water rights in the Rio Mimbres Stream System and/or the Mimbres Underground Water Basin, other than those referred to in this Order and those other Orders entered by this Court in this cause regarding other lands owned by the said defendant in the said stream system or basin."[2] Def. Ex. 25-26. The state court's orders also permanently enjoined Dominguez and Oliver "from any use of the public surface or underground waters of the Rio Mimbres Stream System and/or the Rio Mimbres Underground Water Basin, except in strict accordance with the water right described herein." Def. Ex. 25-26.

In sum, the record from the Mimbres adjudication conclusively establishes that

[2]Defendant has not located, nor have Plaintiffs produced, any other orders in which Dominguez and Oliver were awarded water rights other than those identified in the orders included in the record as Defendant's Exhibits 25 and 26.

Dominguez and Oliver participated in that adjudication, as they were required to do if they were claiming a right to use waters of the Mimbres system. The record further establishes that Dominguez and Oliver were awarded water rights for irrigation purposes that are appurtenant to lands located outside of the Allotments, but that they were not awarded any rights to use water on the Allotments for stockwatering purposes in the Mimbres adjudication. The Walkers' claim that they acquired such water rights from Dominguez and Oliver is thus flatly contradicted by the plain language of the orders and final decree issued by the state court in the Mimbres adjudication. Simply stated, because Dominguez and Oliver were not awarded any rights to the use of water within the Mimbres system on the Allotments, they had no such rights to convey to the Walkers.[3]

B. The Final Decree Issued in the *Mimbres* Adjudication Is Binding on Plaintiffs And Cannot Be Collaterally Attacked in this Action

Most of the remaining arguments set forth in Plaintiffs' opposition brief constitute an improper attempt to relitigate the issues that were fully litigated and finally decided in the Mimbres adjudication. Plaintiffs are bound by the final decree issued in the adjudication and cannot collaterally attack the state court's final decision in this case.

The doctrines of res judicata (or claim preclusion) and collateral estoppel (or issue

[3]To support their assertion that they obtained water rights from Dominguez and Oliver, the Walkers point to two affidavits executed by Chris Dominguez and Louis Oliver. Walker Decl. dated July 19, 2004, Exhibits C and G. However, these affidavits only identify water rights "used or possessed" by Dominguez and Oliver on the Allotments from 1971 to 1994, at which time the affiants state that they sold *the Allotments* to Roy and Shellie Walker. Id. Of course, Dominguez and Oliver did not own the Allotments; they only held grazing permits (licenses) to use those Allotments in accordance with the terms of the permits. Dominguez and Oliver could not convey to the Walkers any greater interest in the Allotments or the water located on the Allotments than they acquired under either state or federal law. Accordingly, the Dominguez and Oliver affidavits, which make no reference to the Mimbres adjudication, do not prove that the affiants owned any vested water rights on the Allotments.

preclusion) "'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources and, by preventing inconsistent decisions, encourage reliance on adjudication.'" MGA, Inc. v. General Motors Corp., 827 F.2d 729, 732 (Fed. Cir.1987) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). The Full Faith and Credit Clause of the Federal Constitution, U.S. Const., art. IV, § 1, as implemented by 28 U.S.C. § 1738, "requires that state court judgments be given the same preclusive effect in later federal actions as they would be given under the laws of the state in which the judgments were rendered." Graybill v. U.S. Postal Service, 782 F.2d 1567, 1571 (Fed. Cir. 1986) (citing Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373 (1985); Migra v. Warren City Dist. Bd. of Ed., 465 U.S. 75 (1984); and Kremer v. Chemical Construction Corp., 456 U.S. 461 (1982)). Following the mandates of the full faith and credit statute, federal courts generally look to the preclusion law of the state where judgment was rendered.[4] See MGA, Inc., 827 F.2d at 732 ("The full faith and credit statute does not permit federal courts to employ their own rules of res judicata in determining the effects of state judgments. Rather, a federal court is to accept the rules chosen by the state in which the judgment is rendered."); Fala Corp. v. United States, 53 Fed. Cl. 86, 88-89 (2002) (finding that a Virginia state court's determination that a receiver's deed was null and void under state law was binding on the Court of Federal Claims and precluded the court from finding that the plaintiffs had "a valid ownership claim [acquired from the receiver's deed] upon which to base a Fifth Amendment takings suit"), appeal dismissed, 66 Fed. Appx. 193 (Fed. Cir. 2003).

Under New Mexico law, the doctrine of res judicata "prevents a party or its privies from

---

[4]Although New Mexico state law therefore applies in determining the preclusive effect of the Mimbres adjudication, Defendant notes that the New Mexico courts have recognized that "federal and New Mexico law on claim preclusion are similar[.]" Rosette, Inc. v. Dept. of the Interior, 169 P.3d 704, 713 (N.M. Ct. App. 2007).

repeatedly suing another party for the same cause of action when the first suit involving the parties resulted in a final judgment on the merits." Rosette, Inc. v. Dept. of the Interior, 169 P.3d 704, 713-14 (N.M. Ct. App. 2007) (citation omitted). Res judicata will be applied if the following three elements are met: "(1) a final judgment on the merits in an earlier action, (2) identity of parties or privies in the two suits, and (3) identity of the cause of action in both suits." Id. at 714 (citing Santana v. City of Tulsa, 359 F.3d 1241, 1246 n. 3 (10th Cir.2004); Restatement (Second) of Judgments § 24 (1982)). Similarly, collateral estoppel "operates to bar the relitigation of ultimate facts or issues actually and necessarily determined in the previous litigation." Rosette, 169 P.3d at 716 (citing Reeves v. Wimberly, 755 P.2d 75, 77 (N.M. Ct. App.1988)). As with res judicata, the purpose of this doctrine "is to prevent endless relitigation of the same issues under the guise of different causes of action." Id. A party will be collaterally estopped from relitigating an issue if the following four elements are met:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Id. (citing Dodge v. Cotter Corp., 203 F.3d 1190, 1198 (10th Cir.2000)). The elements of both res judicata and collateral estoppel are easily satisfied with respect to the claims and issues encompassed by the Mimbres adjudication.

First, as explained above and in Defendant's opening brief, the Mimbres adjudication encompassed all claims to "the right to divert or use the public waters of the Mimbres River Stream System or Mimbres Underground Water Basin, except for those using underground water

exclusively for domestic or stock water purposes." Mimbres adjudication, Final Decree at 1-2 (Def. Ex. 29). Second, Dominguez, Oliver and the United States were defendants in the Mimbres adjudication and were required to present all of their claims to the right to use and divert the public waters of the Mimbres system, with the exception noted above. Third, Dominguez and Oliver had a full and fair opportunity to present and litigate their claimed water rights, and all such claims were finally adjudicated, as evidenced by the orders issued in the adjudication identifying the water rights awarded to Dominguez, Oliver and the United States. Def. Ex. 25-28. Specifically, there is no dispute that the United States was awarded 263 water rights in the Mimbres adjudication for purposes that include stock watering.[5] Pls.' Opp. at 3; Def. Ex. 27-29. It is also undisputed that Dominguez and Oliver were not awarded any water rights in the Mimbres adjudication other than a right to use a certain quantity of water for irrigation purposes on lands they owned outside of the Allotments. A final decree that "expressly approved and confirmed" those prior orders was issued in the Mimbres adjudication on January 14, 1993. Def. Ex. 29. Finally, the Walkers assert that the 39 water rights they allegedly own in the Mimbres system were "lawfully acquired" by Dominguez and Oliver under state law and then sold to the Walkers in 1994. The Walkers are therefore in privity with Dominguez and Oliver with respect to the ownership of such water rights.

---

[5]Plaintiffs repeatedly emphasize that the United States does not have "reserved water rights" for secondary usages on National Forest System lands (such as stock watering). Pls.' Opp. at 3, 8, 14. This point is irrelevant. The 263 water rights that Plaintiffs acknowledge to have been awarded to the United States in the Mimbres adjudication are all state law-based rights to use surface waters or ground waters of the Mimbres River stream system for livestock, wildlife and recreational purposes. See Def. Ex. 27 (Amended Stipulation listing water rights awarded to the United States). In addition to these state law-based water rights, the United States' reserved right to use the surface waters of the Mimbres River stream system for watershed management purposes was recognized in the Mimbres adjudication and that right was included on the list of water rights awarded to the United States. Def. Ex. 27 (Amended Stip., p. 60, water right #264).

All of the elements of both res judicata and collateral estoppel are thus met and the Walkers are precluded in this case from relitigating their "right to divert or use the public waters of the Mimbres River Stream System or Mimbres Underground Water Basin, except for those using underground water exclusively for domestic or stock water purposes," Def. Ex. 29 (final decree), because Plaintiffs or their predecessors were required to present all claims to such rights in the Mimbres adjudication and all such claims were therefore necessarily adjudicated by the state court in that water rights adjudication.[6]

Of the 40 water rights claimed by the Walkers in this case, 39 are in the Mimbres system, and 38 out of those 39 water rights in the Mimbres system were encompassed by the Mimbres adjudication.[7] Specifically, of those 39 claimed water rights, 26 – consisting of 11 springs, 10 tanks and 5 wells – were identified in the Mimbres adjudication and awarded to the United States. Pls.' Opp. at 14. Plaintiffs are collaterally estopped from relitigating the award of these water rights to the United States rather than to their predecessors-in-interest in the Mimbres

---

[6]Shellie Walker states in her most recent declaration that she and her husband "were not aware of any prior adjudication involving the 40 water rights that we obtained" from Dominguez and Oliver in 1994. Walker Decl. ¶ 6 (Doc. 51). This lack of actual knowledge is irrelevant to their claims in this case. The final decree issued in the Mimbres adjudication states that "[a]ll defendants, their successors, assigns, lessees and any other person having actual or constructive knowledge of this decree are permanently enjoined from any diversion or use of the public waters of the Mimbres River Stream System and Mimbres Underground Water Basin, except in accordance with the adjudication orders and this decree." Def. Ex. 29 (Final Decree, p. 3). There is no dispute that the Walkers' predecessors, Dominguez and Oliver, were defendants in the Mimbres adjudication. Accordingly, the Walkers are bound by the outcome of the Mimbres adjudication and cannot attack the orders and final decree issued by the state court in that adjudication in the context of this takings case.

[7]The single water right claimed by Plaintiffs within the Mimbres system that was not required to be presented in the Mimbres adjudication was any right to use water from the "Test Well" for stockwatering purposes since this would be a claim to use underground water from the Mimbres system "exclusively for domestic or stock water purposes." Def. Ex. 29.

adjudication. See, e.g., MGA, Inc., 827 F.2d at 732 ("It is inappropriate to collaterally attack the [state court] judgment in federal district court in an attempt to avoid, defeat or evade the judgment thus denying it force and effect.").

In addition, the Walkers also claim to have acquired an additional 13 water rights (consisting of 10 springs, 2 tanks and 1 well) located on the Allotments and within the Mimbres system. Pls.' Opp. at 10. The Walkers insist that these water rights were all "perfected prior to March 19, 1907." Id. Assuming for the purposes of resolving Defendant's motion for summary judgment that the Walkers' predecessors-in-interest perfected water rights to these surface waters[8] prior to March 19, 1907, then the Walkers' predecessors were required to present their claims to these 10 springs and 2 tanks in the Mimbres adjudication since the adjudication expressly encompassed all claims to the right to divert or use the surface waters of the Mimbres system.[9] See Def. Ex. 29. It is undisputed that Dominguez and Oliver were awarded no such water rights in the Mimbres adjudication. See Def. Ex. 25-29. The Walkers are bound by the actions (and inactions) of their predecessors-in-interest with respect to these water rights, and by the outcome of the Mimbres adjudication. Consequently, the Walkers cannot attack the results of

---

[8]Applicable state regulations define surface water as "[w]ater found in any watercourse including impoundments, ponds, lakes, reservoirs, springs, streams and rivers or flows obtained from an infiltration gallery." 19.26.2.7.DD NMAC - N, 1/31/2005 (available at http://www.ose.state.nm.us/PDF/SurfaceRulesRegs-2005-01-31.pdf (last visited Nov. 26, 2007). This definition encompasses the springs and tanks claimed by Plaintiffs in this case.

[9]Plaintiffs have attempted to create a genuine issue of material fact by disputing whether the certain springs on the Allotments are "developed" or "intermittent" or "semi-permanent." See Pls.' Opp. at 11-12. This dispute is not material to the issues presented in Defendant's motion for summary judgment and need not be resolved by this Court. The bottom line here is that if these springs were subject to appropriation under New Mexico state law and were in fact appropriated by Plaintiffs' predecessors prior to 1907, as Plaintiffs contend, then Plaintiffs' predecessors were required to present these water rights claims in the Mimbres adjudication.

that adjudication by claiming to have acquired 12 water rights to surface waters in the Mimbres system from their predecessors-in-interest that their predecessors either failed to claim or failed to prove in that adjudication.[10]

C. Plaintiffs Cannot Overcome the Adverse Outcome in the *Mimbres* Adjudication By Filing "Declarations" of Ownership

To overcome the undisputed fact that their predecessors were not awarded any water rights on the Allotments in the Mimbres adjudication – and therefore had no such water rights to convey to the Walkers in 1994 – Plaintiffs assert that they have "perfected their vested water rights by filing declarations of ownerships as to all 40 water rights they own, including the 26 water rights identified in the Amended Stipulation" and awarded to the United States. Pls.' Opp. at 15. The declarations submitted by Plaintiffs to the State Engineer's office have no such legal effect.

The final decree entered in the Mimbres adjudication states,

> 1. The orders adjudicating the water rights of each and every defendant in this case [which included Dominguez, Oliver and the United States] as against the State of New Mexico are expressly approved and confirmed.
>
> 2. All adjudication orders, are expressly approved and confirmed inter se, between and among any or all of the defendants in this case, in all

[10]Notably, the Walkers cite no New Mexico law to support their apparent contention that they and their predecessors were not required to present these claims in the Mimbres adjudication. The lack of legal support for this contention is understandable given that the entire purpose of a general stream adjudication would be undermined if claimants could simply opt out of the adjudication process and choose to present their water right claims at a later date and in another forum. See State ex rel. Reynolds v. Pecos Valley Artesian Conservancy Dist., 663 P.2d 358, 359 (N.M. 1983) (the purpose of a general stream adjudication under New Mexico law "is to determine *all claims* to the use of the water in a given stream system in order to facilitate the administration of unappropriated waters and to aid in the distribution of waters already appropriated." (emphasis added)); El Paso & Rock Island Ry. v. Dist. Ct. of Fifth Judicial Dist. for Chaves County, 8 P.2d 1064, 1068 (N.M. 1931) ("[The] intended benefits of general adjudication are illusory if the results are open elsewhere to attack.").

respects.

> 3. *Claims to the right to divert or use the public waters of the Mimbres River Stream System and Mimbres Underground Water Basin not heretofore filed with the Court, shall not be adjudicated except as may be necessary for the correction of mistakes or omissions.*

Def. Ex. 29 (Final Decree at 3) (emphasis added). Although New Mexico state law allows a person claiming a water right established prior to March 19, 1907, from any surface water source to file a declaration of that claimed right, the applicable regulations also expressly state that "[n]o declarations will be accepted for filing within any stream system where an adjudication court has entered an order or decree that operates to bar such claims." 19.26.2.8 NMAC.[11] As set forth above, the final decree in the Mimbres adjudication bars such claims. Def. Ex. 29. Accordingly, Plaintiffs are not entitled to attack that final decree by subsequently filing "declarations" that they own water rights that fell within the scope of the adjudication and were not awarded to them or their predecessors.

In addition, the Walkers cannot assert claims to water rights that should have been presented in the Mimbres adjudication by filing declarations with the State Engineer after the final decree was issued in the adjudication. Instead, after the issuance of this final decree, any person seeking to establish or claim a right to use or divert those waters that were subject to the

[11]New Mexico's Rules and Regulations Governing the Appropriation and Use of the Surface Waters of New Mexico are available on the Office of the State Engineer's website at: http://www.ose.state.nm.us/PDF/SurfaceRulesRegs-2005-01-31.pdf (last visited on Nov. 26, 2007). The state's Rules and Regulations Governing the Appropriation and Use of Groundwater in New Mexico are available at on the State Engineer's website at: http://www.ose.state.nm.us/PDF/RulesRegsGuidelines/GroundWaterRulesRegs-2005-08-15.pdf (last visited on Nov. 26, 2007).

Mimbres adjudication is required under state law to obtain a permit. See Def.'s Mem. at 26-30. It is undisputed that the Walkers did not apply for or obtain any water rights through the state's permitting process. See Pls.' Opp. at 10 ("the Walkers do not rely on water permits as the vehicle for the vested interest in these [13 water rights that were not identified in the Mimbres adjudication]."). Moreover, even in the absence of the Mimbres adjudication, the mere submission of the declarations that Plaintiffs rely on does not establish that the Walkers possess "vested" water rights under New Mexico law. Applicable state regulations provide that "[i]f the declaration is accepted for filing by the state engineer, the acceptance does not constitute validation of the right claimed." 19.26.2.8 D. NMAC.

In sum, Plaintiffs' contention that the "declarations" they submitted to the State Engineer "perfected" their vested water rights is legally incorrect. Such declarations cannot be used to challenge the award of certain water rights to the United States in the Mimbres adjudication, nor can such declarations be used as a vehicle for presenting claims to the State Engineer that should have been made in the adjudication.

D. Plaintiffs' Interpretation of the *Mimbres* Adjudication is Legally Incorrect

Plaintiffs' remaining attempts to avoid the final decree in the Mimbres adjudication are specious. Plaintiffs argue, for example, that "[n]owhere in the Amended Stipulation or the order approving it does it state that the limited water awarded to the United States constitutes the entire amount available, or that the water rights are exclusive to any other claimant."[12] Pls.' Opp. at 4;

[12] Another variation of this argument made by Plaintiffs is that the United States may only be the "legal title holder" to the water rights in question and that the Walkers hold equitable title. Pls.' Opp. at 16-17. Notably, Plaintiffs cite no New Mexico statute, regulation or case law that supports this legal theory. Instead, Plaintiffs rely solely on United States v. Pioneer Irrigation District, 157 P.3d 600 (Idaho 2007), a case involving the application of Idaho state law to define interests in state law-based water rights developed for irrigation purposes that are appurtenant to

see also Pls.' Opp. at 15. Plaintiffs' interpretation of the orders and final decree in the Mimbres adjudication is legally incorrect. The orders awarding limited water rights to Dominguez and Oliver expressly found that they had "no surface or underground water rights" in the Mimbres River stream system other than those set forth in the court's orders. Def. Ex. 25-26. No other order entered by the court expanded the rights awarded to Dominguez and Oliver to include water rights located on the Allotments, and Dominguez and Oliver were enjoined from any use of the public surface or underground waters of the Mimbres system "except in strict accordance" with the limited water rights awarded to them in the adjudication. Def. Ex. 25-26. The Walkers' contention that their predecessors were awarded water rights on the Allotments is flatly contradicted by the plain language of the orders and final decree issued in the Mimbres adjudication.

## III. Plaintiffs Have Not Established Ownership of the Two Water Rights That Fall Outside the Scope of the *Mimbres* Adjudication

Of the 40 water rights claimed by the Walkers, 2 of those rights fall outside the scope of the adjudication. Plaintiffs have not established that they are the owners of these two water rights under New Mexico state law.

The "Test Well." The first of these is the alleged right to the use of the underground waters of the Mimbres basin through a well located on the Allotments referred to as the "Test Well." Plaintiffs' evidence is insufficient as a matter of law to establish that they acquired a vested right to the use of waters from this well for stock watering purposes. First, the Test Well is located in a portion of the Mimbres basin which was declared subject to the jurisdiction of the

---

the lands on which the water is used. Pioneer Valley is entirely inapposite to this case, which involves stock watering rights which are not appurtenant to land, nor carry with them an appurtenant right to use the land where the water is located. Walker IV, 162 P.3d at 895-96.

State Engineer as of February 3, 1970. See 19.27.43.8 NMAC; see also NMAC Art. 7, Declared Underground Water Basins, available at http://www.ose.state.nm.us/PDF/GroundWaterRegs-Article7.pdf (last visited on Nov. 27, 2007). After this date, the only way to obtain a right to use the waters of this underground basin is to first obtain a permit from the State Engineer. See NMSA §§ 72-12-1, 72-12-1.2, 72-12-3, 72-12-5; see also 19.27.1.8-9 NMAC. Plaintiffs have no such permit. Instead, they rely solely on a "declaration of ownership" form that they filled out and submitted to the State Engineer in January 1997. See Walker SJ Decl., Ex. A, p. 73 (Doc. 51-5, p. 13 of 20). Notably, this declaration fails to list the name of the basin where the well is located, even though this is the first piece of information required on the declaration form. The Walkers' incomplete declaration also states that this well was drilled by "Gulf Mineral" in 1975, which is five years after the area of the Mimbres basin where the well was located became subject to the State Engineer's jurisdiction, meaning that a permit was required from the State Engineer to obtain a right to use any water produced from this well. Again, the Walkers have produced no such permit.

Second, although Shellie Walker declares under penalty of perjury that she and her husband "made beneficial use of water we pumped from the Test Well for stock watering purposes from the time we purchased the property in 1994 until June 30, 1998," Walker Decl. ¶ 13, the declaration they submitted to the State Engineer on January 16, 1997, states that the present capacity of the well is "untested" and that the well is "capped at present." Walker Decl., Ex. A, p. 73 (Doc. 51-5, p. 13 of 20). A capped well is not a producing well. Having failed to follow the procedure necessary to acquire a right to use underground waters in the Mimbres basin, and having presented conflicting evidence as to their use of any such water from the Test

Well, Plaintiffs have not met their burden of establishing that they possess a water right under New Mexico state law to use water from this well for stock water purposes.

Rustler Spring. The one remaining water right allegedly owned by Plaintiffs is a right to use "Rustler Spring," which is located within the Rio Grande watershed and therefore is not encompassed by the Mimbres adjudication. Pls.' Opp. at 10-11. However, the Rio Grande watershed is the subject of a separate general stream adjudication in New Mexico. Pope Decl. ¶ 13 (Def. Ex. 30). The only evidence Plaintiffs have submitted that they own a water right under New Mexico law to the use of Rustler Spring is the "Declaration of Ownership of Water Right" form they submitted to the State Engineer's Office on January 16, 1997. Walker Decl., Ex. A, p. 21 of 80 (Doc. 51-3). However, as noted above, the mere submission of such a declaration does not establish that the Walkers possess a "vested" water right under New Mexico law to use water from the Rustler Spring. Indeed, even if that declaration is accepted for filing, applicable state regulations provide that "[i]f the declaration is accepted for filing by the state engineer, the acceptance does not constitute validation of the right claimed." 19.26.2.8 D. NMAC. Moreover, Plaintiffs have not submitted any evidence establishing that they have submitted their claim to this water right in the general stream adjudication involving in the Rio Grande. Accordingly, Plaintiffs have not established that they possess a water right to use water from Rustler Spring for stock watering purposes.

## IV. Plaintiffs Have Failed to Establish A Taking of Any Water Rights, Any Access Rights or Their Ranch

Even if the Court finds that there is a genuine issue of material fact as to whether the Walkers own any of the 40 water rights that they are claiming on the Allotments under New Mexico state law, summary judgment must be entered for Defendant because it is undisputed that

the Walkers have not requested (and therefore have not been denied) access to such water rights. Plaintiffs assert, instead, that they "had reasonable-backed expectations when they acquired their base property that access to their water rights [on the allotments] would not be economically prohibitive." Pls.' Opp. at 19-20. Plaintiffs further assert that the option of moving their alleged water outside of the Allotments – rather than bringing their livestock to the water (and allowing them to graze along the way) – is "logistically impossible and economically prohibitive."[13] Id. at 19. Plaintiffs' argument fails for the simple reason that their unilateral "expectation" that they would be able to continue to use their water rights by bringing their livestock to the water on the Allotments and allowing the livestock to graze along the way is not a property right created or recognized by New Mexico state law. Accordingly, no takings claim can be premised on this mere expectation.

It is well-establishing that "[i]n order to establish a constitutionally protected property interest, the plaintiff must identify a 'legitimate claim of entitlement'" to the property in question-a claim of entitlement created and defined by 'existing rules or understandings that stem from an independent source such as state law.'" Centro Medico de Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 8 (1st Cir. 2005) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). Significantly, "'an abstract need or desire' or a 'unilateral expectation' are not sufficient to cement a constitutionally protected interest." Id. Here, Plaintiffs' claim that their ranch, their water rights and their access rights have been taken is premised entirely on a "unilateral expectation" that access to their alleged water rights would not be economically prohibitive.

[13] Plaintiffs concede that they have not sought permission to or otherwise attempted to use their alleged water rights by moving water off the allotments. In addition, Plaintiffs do not contend that they are precluded from leasing or selling those alleged water rights.

This expectation is not a constitutionally protected property right created and defined by New Mexico state law. Indeed, the New Mexico court held in this case that the Walkers have no such right:

> a right-of-way over private property for the use of a water right is limited to "storage or conveyance" of the water. If an easement over private land is so limited under New Mexico law, an easement over public lands should not be interpreted more broadly. Thus, while the Walkers might, at least in theory, have the right to move their water to their cattle, it is outside the scope of any statutory right-of-way to move cattle to the water, and incidentally have them graze along the way.

Walker IV, 162 P.3d 882, 896.

Accordingly, even if the Court assumes for the sake of argument that the Walkers own water rights on the Allotments (despite Plaintiffs' failure to prove such ownership), the New Mexico Supreme Court's decision makes it clear that a right-of-way for the use of such rights "is limited to 'storage or conveyance' of the water." Id. The Walkers thus have no right under state law to move their cattle to the water. Instead, as the New Mexico Supreme Court found in Walker IV,

> the Walkers' ability to acquire and use their water right on the allotments was conditioned on the permission of the federal government to go on the land. The Walkers were thus responsible for maintaining their license to graze on the public land, and since they lost that license, they cannot now rely on a right to continue a particular beneficial use to maintain the water right that they were able to acquire by way of government permission in the first place. Because the Walkers chose not to comply with the government's permitting process, they took the risk of either forfeiting their water right through non-use or being forced to transfer, lease, or sell that right.

Walker IV, 162 P.3d at 892.

In sum, the Walkers' unilateral expectation that they would be able to continue to make

use of water on the Allotments by bringing their cattle to that water is contrary to New Mexico state law and is therefore not a reasonable expectation or a protected property right. The absence of such a right is fatal to the Walkers' claim that their ranch, their water rights and their access rights have been taken. Simply stated, the government cannot take what the Plaintiffs do not have.

V. CONCLUSION

For the reasons set forth in the foregoing reply brief and in Defendant's motion for summary judgment and supporting memorandum (Doc. 44), Defendant respectfully requests that the Court grant its motion for summary judgment as to Plaintiffs' remaining claims.

DATED: November 28, 2007

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
Environment & Natural Resources Division

s/ Kristine S. Tardiff
KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301
Telephone No.: (603) 230-2583
Facsimile No.: (603) 225-1577
E-mail: kristine.tardiff@usdoj.gov

OF COUNSEL:

MARY ANN JOCA
Assistant Regional Attorney
Office of the General Counsel
United States Dept. of Agriculture
P.O. Box 586
Albuquerque, N.M. 87103-0586